David Leon WOODS, Appellant
(Petitioner below),

v.

STATE of Indiana, Appellee
(Respondent below).

No. 06S00–9403–PD–224

Supreme Court of Indiana.

Nov. 23, 1998.

David C. Stebbins, Columbus, Ohio, Joe Keith Lewis, Marion, for Appellant.

Jeffrey A. Modisett, Attorney General, James D. Dimitri, Deputy Attorney General, Indianapolis, for Appellee.

BOEHM, Justice.

David Leon Woods was convicted of murder and robbery and sentenced to death. He appeals the denial of his petition for postconviction relief challenging the effectiveness of his trial counsel. This case presents a frequently encountered issue. The trial court found that the claim of ineffective representation was waived for failure to raise the issue on direct appeal. Woods contends that the trial record was not sufficiently developed to assess the merits of this claim on direct appeal. In brief, although ineffective assistance occasionally lends itself to resolution on direct appeal, we hold that a Sixth Amendment claim of ineffective assistance of trial counsel may be presented for the first time in a petition for postconviction relief.

However, if ineffective assistance of trial counsel is raised on direct appeal, it will be foreclosed in postconviction proceedings. Turning to the merits of Woods' claim, we affirm the trial court's denial of relief.

### Background and Standard of Review

In the early morning hours of April 7, 1984, Woods went to seventy-seven-year-old Juan Placentia's apartment in Garrett, Indiana and stabbed him to death. Woods and accomplice Greg Sloan then took Placentia's television and later sold it. The full account of these crimes is outlined in Woods' direct appeal affirming the convictions and sentence. *Woods v. State*, 547 N.E.2d 772 (Ind.1989), *aff'd on reh'g*, 557 N.E.2d 1325 (Ind.1990). Because Woods appeals from a negative judgment, this Court will reverse the denial of postconviction relief only if the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the postconviction court. *Spranger v. State*, 650 N.E.2d 1117, 1119–20 (Ind. 1995). In this review, findings of fact are accepted unless "clearly erroneous," Ind. Trial Rule 52(A), but no deference is accorded conclusions of law. *State v. Van Cleave*, 674 N.E.2d 1293, 1295–96 (Ind.1996), *reh'g granted in part*, 681 N.E.2d 181 (Ind.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1060, 140 L.Ed.2d 121 (1998). The postconviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *See, e.g., Stewart v. State*, 517 N.E.2d 1230, 1231 (Ind.1988).

### I. Woods' Principal Ineffectiveness Claim

Four months before trial began, Woods' court-appointed attorney, Charles Rhetts Jr., was allowed to withdraw from the representation due to a possible conflict of interest. Allen Wharry and Douglas Johnston replaced Rhetts and defended Woods at trial. As explained in Part VI below, Woods now argues that Rhetts' conflict of interest and failure to disclose the details of the conflict to Woods or his new lawyers tainted the entire trial. After Woods was convicted, Wharry filed a motion to correct error. Under the law at that time, this motion controlled the issues available on direct appeal. *Ward v.*

*State*, 519 N.E.2d 561, 562 (Ind.1988). No claim of ineffective assistance was raised in the motion. New counsel was then appointed to represent Woods on direct appeal.

The postconviction court found that any claim of ineffective assistance based on the conflict was waived for failure to present the issue on direct appeal. In this appeal, the State contends that even if ineffective assistance was not waived, the claim fails on its merits. Woods maintains that the claim is available on collateral review because the facts supporting the claim—the details of the conflict—were not apparent from the trial record on direct appeal. For this reason, he contends that successor trial counsel Wharry cannot reasonably have been expected to present the issue in the motion to correct error so as to preserve it for direct appeal.[1] Woods also raises other grounds to support his claim of ineffective assistance.

## II. The Varying Forms of Ineffective Assistance Claims

▆▆▆▆ Woods' claim is based solely on the Sixth Amendment right to counsel.[2] *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) established the two-part test of incompetent performance and prejudice for adjudicating challenges to the effectiveness of trial representation. The competence prong ultimately presents a single overarching issue of whether counsel's performance, as a whole, fell below "an objective standard of reasonableness" based on "prevailing professional norms." *Id.* at 685, 104 S.Ct. 2052. "Isolated poor strategy, bad tactics, a mistake, carelessness or inexperience do not necessarily amount to ineffective counsel unless, taken as a whole, the defense

was inadequate." *Davis v. State*, 675 N.E.2d 1097, 1100 (Ind.1996) (citation and internal quotation marks omitted). Nearly fifteen years of practice under *Strickland* demonstrates that "ineffective assistance of counsel" embraces a number of quite different issues. Evaluating the assertion that availability of ineffective assistance in postconviction proceedings should be driven by the state of the record on direct appeal requires an analysis of the diverse nature of these contentions.

For purposes of the question presented today, issues supporting an ineffectiveness claim can be separated into three broad categories. Some can be evaluated on the face of the trial record ("record errors"). Examples are failure to tender or object to an instruction or failure to object to inadmissible evidence where the failure is outside the range of reasonable professional judgment and its prejudicial effect is clear. In those situations, there may be no need for delay or the taking of extrinsic evidence on the competence prong of *Strickland* because the claim may be resolved from the face of the trial record.[3] If so, the interest of prompt resolution of the matter favors permitting it to be raised on direct appeal. For example, in *Pemberton v. State*, 560 N.E.2d 524 (Ind. 1990), trial counsel aggressively litigated a motion to suppress that challenged the admissibility of a suggestive "show-up" identification, but inexplicably failed to object at trial to preserve the issue for appeal. In holding that this amounted to deficient performance, this Court reasoned that "[t]here is no conceivable rational basis upon which to predicate a decision not to object. This can

---

1. Woods alternatively argues that because trial counsel Wharry filed the motion to correct error, he could not have been expected to allege his own (or co-counsel Johnston's) ineffectiveness. *Majors v. State*, 441 N.E.2d 1375 (Ind.1982). Because we view ineffectiveness of counsel as an issue ultimately turning on the overall performance of counsel, where more than one attorney is involved, it is the collective performance that counts. For this reason, Wharry's inability to attack his own performance arguably precluded his raising ineffectiveness in the motion to correct error. However, in view of the holding today, we need not resolve that point even if the only issue supporting the claim related to alleged acts or omissions of Rhetts, not Wharry.

2. Woods cites a number of other state and federal constitutional provisions. Because these are mentioned only in passing and are not supported by separate argument with citation to authority, we address only the Sixth Amendment claim. *Coleman v. State*, 558 N.E.2d 1059, 1062 & n. 2 (Ind.1990).

3. By resolved on the record, we mean resolved in favor of the claimant. For a variety of reasons—lack of prejudice, for example—some claims may be decided adversely to the claimant on direct appeal.

in no way be characterized as a strategical or tactical decision gone awry." *Id.* at 527. *See also Allen v. State,* 686 N.E.2d 760, 778 (Ind.1997) (distinguishing *Pemberton* on the ground that "counsel's decision to file a motion in limine instead of a motion to suppress could well have rested on strategic reasons"), *petition for cert. filed,* 67 U.S.L.W. 3434 (U.S. Aug. 28, 1998) (No. 98–5855). Because the omission was found to be inexcusable and prejudicial as a matter of law, the claim was resolvable on direct appeal without extrinsic evidence.

Far more common, however, are issues that are not visible at all on the trial record, or that require additional record development to assess either the competence of the attorney or the prejudice resulting from the claimed error. These contentions may require an investigation of facts far beyond the record, and sometimes beyond the knowledge of either trial or appellate counsel, to establish substandard counsel performance ("extra-record errors"). Typical examples may be failure to pursue a factual defense of alibi or insanity or, as in this case, an undisclosed conflict of interest.

Finally, much confusion is generated by issues that are based on an action taken on the record, but whose evaluation requires a showing to rebut the presumption of counsel competence. An example of such a "hybrid" contention is an act or omission on the record that is perhaps within the range of acceptable tactical choices counsel might have made, but in the particular instance is claimed to be made due to unacceptable ignorance of the law or some other egregious failure rising to the level of deficient attorney performance. *Kimmelman v. Morrison,* 477 U.S. 365, 383–87, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).[4] The requirement of a showing of the allegedly unacceptable basis for the error derives from the presumption of attorney competence.[5] Because we assume competence, if an action or omission is in the range of reasonable attorney behavior, it can support a claim of ineffective assistance only if that presumption is overcome by specific evidence as to the performance of the particular lawyer. Where no evidence of deficient representation is presented, therefore, the claim fails.[6] The reasoning of trial counsel is

4. *Kimmelman* involved a claim of ineffective assistance based on a failure to file a motion to suppress. Trial counsel neglected to file the motion not for strategic reasons, but because he had not conducted pretrial discovery to determine whether there was any incriminating evidence that should be suppressed. Elaborating points made in *Strickland* two years earlier, a unanimous Supreme Court in *Kimmelman* concluded that counsel's performance fell below prevailing professional norms. *Kimmelman* reasoned: "[Counsel] has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate, the State's case through discovery." *Kimmelman,* 477 U.S. at 385, 106 S.Ct. 2574 (internal quotation marks and citation omitted). The point for purposes of today's case is that even though a hypothetical reasonable lawyer might have made the same choice for legitimate strategic reasons, if the act or omission was due to unacceptable attorney error then the first prong of *Strickland*—unreasonable performance—is satisfied. Other courts have derived the same lesson from *Kimmelman. Williams v. Washington,* 59 F.3d 673, 680 (7th Cir.1995) (failure to object to the admission of evidence was substandard performance because the omission was due to ignorance rather than strategic choice); *Harris v. Reed,* 894 F.2d 871, 877–79 (7th Cir. 1990) (decision not to present any defense was

the product of lack of complete investigation rather than trial strategy).

5. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 ("A fair assessment of attorney performance requires that every effort be made ... to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.... Even the best criminal defense attorneys would not defend a particular client in the same way.") (citation omitted).

6. Because trial counsel's actual motives and any reasons for an act or omission are typically unknown on direct appeal, when no evidence of incompetence is presented we often deal with hybrid claims on direct appeal by considering what might have motivated—not what did motivate—trial counsel. Due to the nature of a hybrid claim—an act or omission presumed to be within the range of reasonable professional judgment—the only inquiry is whether a reasonable hypothetical lawyer might have done the same thing. *See, e.g., Smith v. State,* 689 N.E.2d 1238 (Ind.1997) (decision not to move to suppress or object to the admission of defendant's confession was not ineffective assistance because the omission was the product of a reasonable tactical choice under the circumstances); *id.* at 1244 n. 8, 689 N.E.2d 1238 (collecting Indiana cases rejecting on direct appeal ineffectiveness claims

sometimes apparent from the trial record.[7] However, in assessing hybrid contentions it is often necessary for an additional record to be developed to show the reason for an act or omission that appears in the trial record.[8]

For the reasons explained below, we conclude that precisely because it can take myriad forms, ineffective assistance of trial counsel "eludes once-and-for-all disposition." *Guinan v. United States*, 6 F.3d 468, 473 (7th Cir.1993) (Easterbrook, J., concurring).[9] Nonetheless, we are dealing with a subject that has the potential for both forfeiture of important constitutional protections and also enormous demands on counsel and the judiciary. Accordingly, the always important objectives of clarity and workability of rules of law take on even greater significance.

### III. Indiana Precedent on Waiver of Ineffective Assistance Claims

■ Despite the frequency with which challenges to the effectiveness of trial representation appear in postconviction petitions in this State, this Court has not conclusively resolved whether waiver of this claim (1) always arises from a failure to raise it on direct appeal, or (2) never does, or (3) turns on whether there was or might have been a need for extrinsic evidence to assess either attorney competence or prejudice. It is well established as a general proposition that issues that were or could have been raised on direct appeal are not available in postconviction proceedings and that postconviction is not a "super appeal." *Weatherford v. State*, 619 N.E.2d 915, 916–17 (Ind.1993); Ind. Post–Conviction Rule 1(1)(b) (providing that postconviction is "not a substitute for a direct appeal"). Rather, postconviction review supplements direct review by allowing the petitioner "to raise issues not known at the time of the original trial and appeal or for some reason not available to the defendant at that time." *Schiro v. State*, 533 N.E.2d 1201, 1204 (Ind.1989). As this Court cautioned in one of the first cases to flesh out the postconviction rules: "It was not our intent . . . to provide a means whereby one convicted could repeatedly re-litigate claims of improper conviction, or could . . . raise an untimely challenge directed at some aspect of the proceedings against him." *Langley v. State*, 256 Ind. 199, 203, 267 N.E.2d 538, 540 (1971).

■ Consistent with the residual nature of postconviction proceedings, we have held that failure to raise a "record" ineffectiveness claim results in waiver of the issue. For example, in *Johnson v. State*, 502 N.E.2d 90 (Ind.1986), in an effort to show that the defendant was credible because he could admit past mistakes, trial counsel questioned the defendant on direct examination about problems in his childhood and delinquent behavior. The defendant contended in postcon-

---

based on failure to challenge the admissibility of evidence); *Thompson v. State*, 671 N.E.2d 1165, 1171 (Ind.1996) (rejecting ineffectiveness claim based on failure to call witness who had testified at a pretrial hearing and noting a "variety of possible reasons" supporting counsel's decision); *Barany v. State*, 658 N.E.2d 60, 66 (Ind.1995) (no ineffectiveness where jury instructions related to sentencing were consistent with a strategic choice to emphasize that defendant would not be freed in the near future if found insane or guilty but mentally ill). Appeals from denial of postconviction relief are sometimes resolved in the same way. *Matheney v. State*, 688 N.E.2d 883, 902–03 (Ind.1997) (no ineffectiveness based on failure to challenge jury instruction on possible penalties in lieu of death sentence because "[a]n attorney may reasonably desire not to remind a jury deliberating a death sentence that the defendant was found guilty of another serious felony in addition to murder," and no contrary evidence as to counsel's motives), *petition for cert. filed*, —— U.S.L.W. —— (U.S. Aug. 28, 1998) (No. 98–5867).

**7.** *See, e.g., Van Cleave v. State*, 517 N.E.2d 356, 371 (Ind.1987) (trial counsel testified at hearing on motion to correct error).

**8.** Other courts have treated these three categories of claims similarly, although without explicitly discussing the conceptual differences elaborated here. *See, e.g., People v. Tello*, 15 Cal.4th 264, 62 Cal.Rptr.2d 437, 933 P.2d 1134 (1997) (concluding in substance that ineffectiveness claim was "hybrid" in nature and reversing intermediate appellate holding that error was of "record" variety that required reversal).

**9.** *See generally* Victor E. Flango & Patricia McKenna, *Federal Habeas Corpus Review of State Court Convictions*, 31 Cal. W.L.Rev. 237 (1995) (collecting data on forms of ineffective assistance asserted in federal habeas petitions); Jon R. Waltz, *Inadequacy of Trial Defense Representation as a Ground for Post–Conviction Relief in Criminal Cases*, 59 Nw. U.L. Rev. 289 (1964) (surveying diverse grounds cited in claims of ineffective representation).

viction that this trial tactic prejudiced his assertion of self-defense by damaging his credibility. This Court held that the issue of trial counsel's effectiveness was waived because the single basis asserted was "clearly known and available" on direct appeal. *Id.* at 91. *Accord Hall v. State*, 646 N.E.2d 379 (Ind.Ct.App.1995) (claim of trial ineffectiveness for failure to object to allegedly defective jury instruction was waived for failure to present the issue on direct appeal). These cases, although not framing the issue in terms of what was apparent from the trial record, support the proposition that a single matter knowable from the trial record is waived if not presented on direct appeal. *Cf. State v. Daniels*, 680 N.E.2d 829, 835 n. 10 (Ind.1997) (issues pertaining to trial or appellate counsel's effectiveness could not be litigated in second petition for postconviction relief because, among other reasons, the alleged errors were apparent on the record from the time of trial).

■ Two cases are closer to presenting the issue of whether any need for record development allows an ineffectiveness claim to be presented for the first time in collateral proceedings. *Hollonquest v. State*, 432 N.E.2d 37 (Ind.1982) and *Williams v. State*, 464 N.E.2d 893 (Ind.1984) both involved an ineffective assistance claim based on trial counsel's failure to call an alibi witness. Like most failures to investigate, establishing this ground for ineffective assistance would require going beyond the trial record to show what the investigation, if undertaken, would have produced. This is necessary because success on the prejudice prong of an ineffectiveness claim requires a showing of a reasonable probability of affecting the result. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997), *cert. denied*, — U.S. —, 118 S.Ct. 1528, 140 L.Ed.2d 678 (1998). *Hollonquest* and *Williams* held that the claim was waived, but for several reasons neither case controls the issue presented today. First, *Hollon-*

*quest* was decided before *Strickland* established the two-prong test for ineffective assistance, and *Williams*, though decided one month after *Strickland*, did not consider the effect of *Strickland*. Second, and more importantly, *Hollonquest* and *Williams* were decided before courts began giving much detailed consideration to the complexity of ineffectiveness claims. Both simply applied general waiver principles to the facts in a single paragraph. Neither case discussed the potential need for an evidentiary hearing to assess either the reasons for the alleged error or the likelihood that it affected the result.[10]

We have noted in other contexts that an ineffective assistance of counsel claim may often require evidentiary development. For example, *Hough v. State*, 690 N.E.2d 267 (Ind.1997), *petition for cert. filed*, 67 U.S.L.W. 3362 (U.S. July 23, 1998) (No. 98–5826), recently observed that a grant of summary judgment on the issue of trial counsel's effectiveness without an evidentiary hearing is "a bit unusual" because "[t]ypically ... an ineffective assistance of counsel claim revolves around the unique facts of that case and many of those facts may exist outside of the record." *Id.* at 273. Indeed, some of our decisions suggest, without examining the question in any detail, that any challenge to the effectiveness of trial counsel's representation may be raised for the first time in postconviction proceedings. *Lane v. State*, 521 N.E.2d 947 (Ind.1988) (ineffectiveness due to trial counsel's failure to call an alibi witness would have been available in postconviction, but defendant could not raise issue for first time on appeal through guise of ineffective assistance of postconviction counsel). Others could be read to imply the contrary. *Resnover v. State*, 547 N.E.2d 814, 816 (Ind.1989) ("Ineffective assistance of counsel as an issue is known and available to a party on his direct appeal...."); *Metcalf*

**10.** More recently, *Spranger v. State*, 650 N.E.2d 1117, 1121 (Ind.1995), citing *Hollonquest*, restated the general proposition that failure to challenge the effectiveness of trial counsel on direct appeal results in waiver without addressing potential differences in the types of contentions that may support a claim of ineffective representation. There the defendant urged an

exception to this rule on the ground that the ineffective assistance was not apparent on the face of the record. However, *Spranger* did not reach this contention because trial counsel also represented the defendant on direct appeal, and there was no waiver for that reason alone. *Id.* at 1120–21.

*v. State,* 451 N.E.2d 321 (Ind.1983) (holding several assertions of alleged ineffectiveness to be waived without distinguishing between record-based contentions and those requiring evidentiary development).

■ Most recent Court of Appeals cases have held that ineffective assistance of trial counsel is generally known and available on direct appeal so long as the defendant is represented by different counsel on appeal. *See, e.g., Haynes v. State,* 695 N.E.2d 148, 153 (Ind.Ct.App.1998); *Moore v. State,* 649 N.E.2d 686, 690 n. 2 (Ind.Ct.App.1995). At least one intermediate appellate decision distinguished record-based assertions of ineffectiveness from those requiring extrinsic evidence and held that the latter may be raised for the first time in postconviction proceedings. *Wilson v. State,* 565 N.E.2d 761 (Ind. Ct.App.1990). Finally, this Court recently held that if a claim of ineffectiveness is raised on direct appeal, it precludes raising in a postconviction proceeding additional issues to support a claim of ineffective assistance. *Sawyer v. State,* 679 N.E.2d 1328 (Ind.1997); *Bieghler v. State,* 690 N.E.2d 188, 200–01 (Ind.1997) (citing *Sawyer* ).

In sum, the availability of ineffective assistance of trial counsel in postconviction proceedings where it was not asserted on direct appeal is unresolved as a matter of this Court's precedent.

## IV. Alternative Approaches to Procedural Default

Woods suggests we resolve this dilemma by following the logic of several Seventh Circuit decisions holding that an ineffective assistance claim that cannot be fully framed or evaluated without extrinsic evidence may be presented for the first time in a petition for a writ of habeas corpus. *Guinan v. United States,* 6 F.3d 468 (7th Cir.1993); *United States v. Taglia,* 922 F.2d 413 (7th Cir.1991). The State does not dispute that the record on direct appeal did not reveal the details of Rhetts' conflict, but argues that it makes no difference for purposes of waiver. The State maintains that if we adopt the Seventh Circuit standard, the exception will swallow the rule because the petitioner will be able to avoid procedural default simply by pointing to "*some* evidence outside the record that he could claim was relevant to an allegation of ineffectiveness of trial counsel." The State argues that the proper remedy where extrinsic evidence is needed to evaluate the merits of an ineffectiveness claim is to permit appellate counsel to develop the additional facts in a hearing on a motion to correct error. *See generally* Ind.Crim. Rule 16; Ind. Trial Rule 59. Neither Woods nor the State argues for the view, followed in many state [11] and federal courts,[12] that inef-

11. *See generally* Donald E. Wilkes Jr., State Post-conviction Remedies and Relief (1996 ed. & Supp.1997). For a recent case illustrating the reluctance of some state courts to address challenges to trial counsel's effectiveness on direct appeal, see *People v. Tello,* 15 Cal.4th 264, 62 Cal.Rptr.2d 437, 933 P.2d 1134 (1997) (reversing intermediate appellate decision holding that trial counsel was ineffective for not moving to suppress evidence).

12. Although the Supreme Court of the United States has not squarely confronted the issue, *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) contains a strong suggestion that collateral review is the preferred forum in the federal system for adjudicating challenges to trial counsel's effectiveness:

Because collateral review will frequently be the only means through which an accused can effectuate the right to counsel, restricting the litigation of some Sixth Amendment claims to trial and direct review would seriously interfere with an accused's right to effective representation. . . . [A]n accused will often not real-

ize that he has a meritorious ineffectiveness claim until he begins collateral review proceedings, particularly if he retained trial counsel on direct appeal.

*Id.* at 378, 106 S.Ct. 2574. At least one federal circuit drew from *Kimmelman* the proposition that ineffective assistance of trial counsel can be put off until postconviction proceedings. *English v. Cody,* 146 F.3d 1257 (10th Cir.1998) (discussing the matter in the context of whether challenges to trial counsel's effectiveness were barred in federal habeas proceedings for failure to raise the claim on direct appeal in state court). Others have relied on a confession of error in *Billy–Eko v. United States,* 509 U.S. 901, 113 S.Ct. 2989, 125 L.Ed.2d 685 (1993), where the Solicitor General took the position that federal criminal defendants should not be required to assert ineffective assistance of trial counsel on direct appeal. *See, e.g., United States v. DeRewal,* 10 F.3d 100, 103–05 (3d Cir.1993) (quoting Solicitor General's brief in *Billy–Eko* and holding that a showing of "cause and prejudice" was not required to raise issue of trial counsel's effectiveness in collateral proceedings); *cf. Guinan,* 6

fective assistance of trial counsel, irrespective of the nature of the contentions, can (or even must) be postponed until collateral review. Nonetheless, for the reasons set forth below, we conclude that the most satisfactory resolution of a variety of competing considerations is that ineffective assistance may be raised on direct appeal, but if it is not, it is available in postconviction proceedings irrespective of the nature of the issues claimed to support the competence or prejudice prongs.

### A. *Use it or lose it*

·The State maintains that the issue of trial counsel's effectiveness is known on direct appeal and therefore waived if not presented. This view would not differentiate at all among the various types of contentions that may support a claim of ineffective assistance of counsel. There appear to be only a few states and no federal circuits adhering to that approach, *cf.* note 15 *infra*, and with good reason. As tribunals of last (or at least not first) resort, appellate courts review the work of other courts as reflected in the record. We agree with the Tenth Circuit that in the context of assessing ineffectiveness claims, typically a "factual record must be developed in and addressed by the [trial] court in the first instance for effective review." *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir.1995) (en banc) (footnote omitted). Where the record is incomplete, the reviewing court is poorly positioned to address the merits; nor does it have any reasonable ability to engage in factfinding or take new evidence. The State's approach might be more palatable if ineffective assistance were commonly easily resolved based on the trial record, but as already noted it often is not. Nor would a blanket ban on raising ineffective assistance of counsel in postconviction proceedings be fair to the defendant. Because of the presumption of competence, extrinsic evidence is needed in many cases:

> When the only record on which a claim of ineffective assistance is based is the trial record, every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight. It is no surprise that such claims almost always fail.

*Taglia*, 922 F.2d at 417–18. In addition, the rule that the State proposes appears to leave no place for ineffectiveness claims, such as counsel's undisclosed conflict of interest, not reasonably knowable until after direct appeal.

Even under a "use it or lose it" approach, the question is not whether an evidentiary hearing will be held in some cases, but rather what procedure is available to·develop the record. We disagree with the State that allowing appellate counsel to supplement the record in a hearing on a motion to correct error is sufficient where an appellate court concludes that additional evidence is needed. First, this implicitly requires appellate counsel to investigate facts outside the record in a frequently futile effort to unearth all possible ineffective assistance claims for presentation on direct appeal. As elaborated in Part V below, expecting appellate lawyers to look outside the record for error is unreasonable in light of the realities of appellate practice. Direct appeal counsel should not be forced to become a second trial counsel. Appellate lawyers may have neither the skills nor the resources nor the time to investigate extra-record claims, much less to present them coherently and persuasively to the trial court. Requiring any claim to be raised on direct appeal under pain of waiver forces upon appellate counsel "a nasty dilemma: if he seeks reversal on the basis of ineffective assistance of trial counsel, the judgment is almost cer-

---

F.3d at 475 (Easterbrook, J., concurring) (also citing *Billy–Eko* confession of error in arguing for bright-line rule that ineffective assistance need not be raised on direct appeal). The United States advanced a similar view in prior administrations. *United States v. Cronic*, 466 U.S. 648, 667 n. 42, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (noting but not addressing merits of government's argument that "a defendant can attack the actual performance of trial counsel only through a petition for postconviction relief"). Federal precedent is collected in a number of secondary sources. *See generally Twenty–Seventh Annual Review of Criminal Procedure: Right to Counsel*, 86 Geo. L.J. 1593, 1612–13 & n. 1659 (1998); *Twenty–Seventh Annual Review of Criminal Procedure: Habeas Relief for Federal Prisoners*, 86 Geo. L.J. 1938, 1945 & n. 2904 (1998); Larry W. Yackle, Postconviction Remedies § 108 (1981 & Supp.1998).

tain to be affirmed, barring the raising of the issue in collateral proceedings; if he does not, the government may contend in any collateral proceeding that he should have." *Guinan,* 6 F.3d at 472.

Second, even if extra-record investigation were a fair burden to place on appellate counsel, we see little point in forcing the claim to be squeezed into the Procrustean bed of a motion to correct error. That procedure has never been viewed as a substitute for postconviction relief. *Langley v. State,* 256 Ind. 199, 204, 267 N.E.2d 538, 541 (1971) (motion to correct error provides "an expeditious means by which a trial judge may have an opportunity to first correct his own errors while the circumstances surrounding the alleged error are still fresh in his memory"). Moreover, some forms of ineffective assistance do not fit within any recognized ground for either a Trial Rule 59 or Trial Rule 60 motion. Both rules contemplate either "error" or new evidence that "with reasonable diligence, could not have been discovered and produced at trial." Ind. Trial Rule 59(A)(1). The thrust of an ineffective assistance claim is often neither of these, but rather that trial counsel failed to present relevant evidence. To be sure, such a claim could be presented as any "other" ground under Rule 60(B)(8) (if it is within one year), but there is little reason to prefer that mode over a postconviction proceeding in the same court that can be conducted by counsel equipped to present it independent of any errors alleged on direct appeal.[13] Even if these procedures were a good fit for review of ineffective assistance claims, any attempt to adjudicate the adequacy of trial representation in a motion to correct error creates yet another round of litigation—with further expense and delay—between the trial and postconviction proceeding.

■ A "use it or lose it" rule has other undesirable consequences. A state-court finding of procedural default generally precludes review of the merits of the claim in federal collateral proceedings.[14] Thus if an ineffectiveness claim is waived if not presented on direct appeal, it may never be addressed on the merits by any court. The narrowing of federal habeas review since the 1970s reflects increasing deference to state courts in adjudication of federal constitutional claims arising out of state criminal trials:

> The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility of vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.

*Engle v. Isaac,* 456 U.S. 107, 128, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (citation omitted). Hence as a matter of procedural fairness a finding of waiver by an Indiana court must be predicated on a meaningful opportunity to litigate the claim. Alternatively, if an ineffectiveness claim found to be waived in our courts is nonetheless addressed on the merits in federal court, this State will have foregone the opportunity to correct the possible error before federal review of our judicial process. One goal of our postconviction rules is to minimize the level of federal constitutional error before federal review of the conviction: "[O]ne of the functions of our post conviction remedy rules is to preserve what sanctity remains to this [S]tate's disposition of a criminal charge by allowing a

---

**13.** Federal courts have reached the same sensible conclusions in rejecting similar arguments under the federal analogs to the above rules. *Cf. United States v. DeRewal,* 10 F.3d 100, 104 (3d Cir.1993) ("[A] newly discovered evidence motion is at best a poorly suited vehicle for advancing an ineffective assistance of counsel claim"); *United States v. Davenport,* 986 F.2d 1047, 1050 (7th Cir.1993) ("If all the defendant can get is an opportunity to enlarge the record—something he could obtain with less fuss [in collateral review]—then raising ineffective assistance on appeal does the defendant no favors.").

**14.** *See generally Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); David B. Sweet, Annotation, *Requirement, In Federal Habeas Corpus Proceedings, of Showing of Cause and Prejudice With Respect to Relief From State Criminal Conviction or Sentence— Supreme Court Cases,* 120 L.Ed.2d 991 (1997) (discussing *Coleman* and other cases on procedural default in federal habeas proceedings).

convicted criminal defendant ample opportunity to present claims for relief in the courts of this state before resort must be had to the federal courts." *Langley*, 256 Ind. at 204, 267 N.E.2d at 541. An unnecessarily or unfairly restrictive waiver rule would frustrate this purpose.[15]

The suggestion has been made that unless ineffectiveness is required to be raised on direct appeal, an excessive volume of postconviction evidentiary hearings will be required. However, if a hearing is necessary, it is not a significantly different burden on trial courts to consider the allegations of a postconviction claim for relief as opposed to the alternative of mid-appeal hearings. Moreover, not every claim requires a second hearing. Even if an ineffectiveness claim is preserved for postconviction review, it may be resolvable by a postconviction court without a hearing for failure to allege facts— either in the current record or to be proved in an evidentiary hearing—establishing attorney incompetence. And because a postconviction claim may be disposed of by summary

judgment, the procedures for piercing pleadings are available to resolve the matter without a hearing if there is no genuine issue of material fact. Ind. Post–Conviction Rule 1(4)(g); *State v. Daniels*, 680 N.E.2d 829, 831–32 (Ind.1997).

### B. *Defer all or only some claims*

Some courts resolve these varying considerations by holding that a claim of ineffective assistance of trial counsel is waived if withheld until the collateral stage unless the petitioner has a "valid reason" for the postponement. Under this view, good cause for waiting can be shown by any one of either (1) trial counsel was also appellate counsel; (2) the claim could not be developed without new facts; or (3) at the time of the direct appeal, it reasonably appeared that new evidence would be needed, even though it has since become clear that the trial record was adequate grounds for judging the merits of the claim. *Guinan*, 6 F.3d at 472.[16]

15. Indeed, an interesting issue is presented if a state's procedural rules for challenging trial counsel's effectiveness are so restrictive that no realistic opportunity to argue the claim in state court is given. A colloquy on that point between the Tenth Circuit and Oklahoma's courts over the fairness of Oklahoma's postconviction procedures has been taking place since 1994. *Brecheen v. Reynolds*, 41 F.3d 1343 (10th Cir.1994) held that Oklahoma's rule that ineffectiveness claims are generally waived if not presented on direct appeal was not an "adequate" state ground that precluded federal habeas review because it deprived the petitioner of "any meaningful review of his ineffective assistance claim." *Id.* at 1364. *Brecheen* concluded that Oklahoma's waiver rule was a "Hobson's choice" that forced the petitioner to raise the claim on direct appeal under threat of forfeiture but without the benefit of additional (and possibly essential) factfinding. *Id.* A number of Tenth Circuit decisions followed *Brecheen* and refused to find a claim of ineffective assistance to be procedurally barred. *See, e.g., Nguyen v. Reynolds*, 131 F.3d 1340, 1347 n. 3 (10th Cir.1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 128, 142 L.Ed.2d 103 (1998). Advancing arguments similar to the State's contentions here, the Oklahoma Court of Criminal Appeals responded to *Brecheen* by defending Oklahoma's waiver rule. *Berget v. State*, 907 P.2d 1078 (Okla.Crim.App.1995). Among other things, *Berget* emphasized that procedures were available on direct appeal for remand for an evidentiary hearing where record development

was required to evaluate the claim. *Id.* at 1084–85. In a recent reply to *Berget*, the Tenth Circuit expressed doubt that these procedures cured the concerns that drove *Brecheen*, but left open the possibility that an Oklahoma court's finding of waiver for failure to raise ineffective assistance on direct appeal could constitute an "adequate" state ground for purposes of federal procedural default. *English v. Cody*, 146 F.3d 1257, 1264 (10th Cir.1998). The Tenth Circuit has reached similar conclusions with respect to Wyoming's postconviction procedures. *Osborn v. Shillinger*, 861 F.2d 612, 622–23 (10th Cir.1988) (ineffectiveness claim was available in federal habeas proceedings because it depended on facts outside the record and trial counsel acted as appellate counsel). Wyoming's approach resembles Oklahoma's and the State's proposed rule here. *See Calene v. State*, 846 P.2d 679 (Wyo.1993). The parties do not contend in this case that Indiana's rules of procedural default present any similar concerns as to reasonable opportunity to present the claim in state court.

16. A variant of this approach is also followed by the Second Circuit, *Billy–Eko v. United States*, 8 F.3d 111 (2d Cir.1993), and several states. *See, e.g., People v. Whitehead*, 169 Ill.2d 355, 215 Ill.Dec. 164, 662 N.E.2d 1304 (Ill.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 587, 136 L.Ed.2d 517 (1996); *State v. Courchene*, 256 Mont. 381, 847 P.2d 271 (1992); *State v. Lentz*, 70 Ohio St.3d 527, 639 N.E.2d 784 (1994).

We have recognized the first of these. *Spranger v. State,* 650 N.E.2d 1117, 1121 (Ind.1995); *cf. Matter of Sexson,* 666 N.E.2d 402 (Ind.1996) (trial counsel violated Indiana Rule of Professional Conduct 1.7(b) by arguing own ineffectiveness on direct appeal). The second and third grounds of this approach are theoretically sound, but ultimately in our view generate more complexity and unpredictability than is desirable. In application this approach raises the thorny problem of identifying the ineffectiveness claims that are available on direct review. There are bound to be complications and uncertainty in determining whether extrinsic evidence reasonably appeared to be needed at the time of direct appeal to assess the merits of the claim. The postconviction court will have to undertake the difficult task of seeing the case through appellate counsel's eyes, possibly long after the direct appeal was decided. The potential exists for efforts of both counsel and courts to be wasted on both direct appeal and collateral review in satellite litigation over the application of a complicated waiver standard.[17] Permitting all claims of ineffectiveness to be raised in postconviction proceedings if ineffectiveness was not raised on direct appeal offers a bright-line rule that is understandable. It is preferable over requiring ineffectiveness to be raised on direct appeal because the track record for ineffectiveness claims demonstrates that most require additional evidence to assess their merits. *Cf. Guinan,* 6 F.3d at 473 (Easterbrook, J., concurring) ("No surprise, then, that my colleagues have been unable to find a single case in which this circuit reversed a conviction on direct appeal because of deficient performance by trial counsel."). Finally, and more importantly, assessment of a claim of ineffective representation requires consideration of the overall performance of counsel

and a reasonable probability that the alleged error affected the outcome. *State v. Moore,* 678 N.E.2d 1258, 1261 (Ind.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1528, 140 L.Ed.2d 678 (1998). Because these factors rarely lend themselves to resolution in isolation, the effectiveness of the representation should be resolved in a single proceeding.[18]

For the reasons outlined, a postconviction hearing is normally the preferred forum to adjudicate an ineffectiveness claim. We nonetheless agree that potential for administrative inconvenience does not always outweigh the costs of putting off until tomorrow what can be done today: "If there is no reason for delay in presenting a claim, the delay should not be countenanced, for there is a considerable social interest in the finality of criminal proceedings." *Taglia,* 922 F.2d at 418. If we are dealing with an improperly incarcerated defendant, the cause of justice is plainly better served by making that determination as soon as possible. The same is true even if a retrial is required. Resolving record-based ineffectiveness claims on direct review also has some doctrinal appeal because it is more consistent with the residual purpose of postconviction proceedings. *Langley,* 256 Ind. at 204–05, 267 N.E.2d at 541 ("[T]he permissible scope of review on direct appeal is well defined and broader than that permitted by collateral attack through post conviction relief."). These considerations can be largely met under a procedure that allows a defendant to suspend the direct appeal to pursue an immediate petition for postconviction relief. *Davis v. State,* 267 Ind. 152, 368 N.E.2d 1149 (1977); *see also Hatton v. State,* 626 N.E.2d 442 (Ind.1993) (reiterating vitality of *Davis* procedure). This should cover the exceptional case in

---

**17.** The Tenth Circuit adhered for several years to a functional equivalent of the *Guinan* rule but fell into line with the majority of federal circuits in 1995. *United States v. Galloway,* 56 F.3d 1239 (10th Cir.1995) (en banc), *overruling Beaulieu v. United States,* 930 F.2d 805 (10th Cir.1991). *Galloway* did not indicate whether administrative convenience was any reason for preferring a rule allowing all issues supporting a claim of ineffective assistance to be raised for the first time in collateral proceedings.

**18.** Although *Guinan* is still good law, the Seventh Circuit has since edged closer to permitting ineffective assistance claims to be postponed until federal habeas proceedings irrespective of the state of the record on direct appeal. *See, e.g., Duarte v. United States,* 81 F.3d 75, 77 (7th Cir.1996) (when "any important element" of an ineffectiveness claim "could not have been presented on the original record," efficiency in presenting all challenges to trial counsel's performance in a single hearing is a valid reason to postpone the entire issue until collateral review).

which the defendant prefers to adjudicate a claim of ineffective assistance before direct appeal remedies have been exhausted. Because of the *Davis* procedure, the direct appeal is not necessarily an obstacle to speedy adjudication of the adequacy of the representation, as recent cases in which the procedure was invoked for that purpose demonstrate. *See Coleman v. State*, 694 N.E.2d 269 (Ind. 1998); *Brown v. State*, 691 N.E.2d 438 (Ind. 1998). Although not to be used as a routine matter in adjudicating the issue of trial counsel's effectiveness,[19] a *Davis* request may be appropriate "where the claim asserted arguably requires a certain level of fact finding not suitable for an appellate court." *Lee v. State*, 694 N.E.2d 719, 721 n. 6 (Ind.1998), *petition for cert. filed*, 67 U.S.L.W. 3362 (U.S. Sept. 24, 1998) (No. 98–6205).

### C. All or nothing

As already noted, some grounds supporting an assertion of inadequate representation will not be reasonably knowable, much less fully factually developed, until after direct appeal. For the reasons given, the doors of postconviction must be open to adjudicate ineffective assistance if it is not raised on direct appeal. The defendant must decide the forum for adjudication of the issue— direct appeal or collateral review. The specific contentions supporting the claim, however, may not be divided between the two proceedings. The administrative disadvantages to an approach that would require the defendant essentially to split an ineffectiveness claim between record-based and other contentions also apply to voluntary bifurcation. We note again that we recently held that ineffective assistance of trial counsel is not available in postconviction if the direct

appeal raises any claim of deprivation of Sixth Amendment right to counsel. *Sawyer v. State*, 679 N.E.2d 1328 (Ind.1997); *Bieghler v. State*, 690 N.E.2d 188, 200–01 (Ind. 1997) (citing *Sawyer* ); *but cf. Galloway*, 56 F.3d at 1242 (holding that presentation of ineffectiveness claim on direct appeal did not foreclose assertion in federal habeas proceedings of additional grounds for finding inadequate representation). As a practical matter, this rule will likely deter all but the most confident appellants from asserting any claim of ineffectiveness on direct appeal. It will certainly deter some. Nonetheless, the concerns for prompt resolution of claims lead us to permit ineffective assistance to be raised within or without the procedure available pursuant to *Davis*.

▮ In sum, we hold that a Sixth Amendment claim of ineffective assistance of trial counsel, if not raised on direct appeal, may be presented in postconviction proceedings. However, if ineffective assistance of trial counsel is raised on direct appeal by a *Davis* petition or otherwise, the issue will be foreclosed from collateral review.

## V. Role of Ineffective Assistance of Appellate Counsel

▮ Some have suggested that waiver of a trial ineffectiveness claim is inconsequential (and the foregoing discussion is thus much ado about nothing) because there always remains a possible claim of ineffective assistance of appellate counsel. The argument goes that because the same claim may be repackaged as a challenge to appellate counsel's failure to raise trial counsel's effectiveness on direct appeal, the substance of the claim is addressed in either event.[20] Howev-

---

19. *Thompson v. State*, 671 N.E.2d 1165, 1168 n. 2 (Ind.1996) (motion for remand pursuant to *Davis* to present evidence of ineffectiveness denied); *cf. State v. Lopez*, 676 N.E.2d 1063, 1068–69 (Ind.Ct.App.1997) (appellate counsel was not ineffective for failing to request *Davis* procedure to develop record for appeal), *trans. denied*, 683 N.E.2d 587 (Ind.1997) (table).

20. *See, e.g., Walker v. State*, 933 P.2d 327, 334 (Okla.Crim.App.1997) (reiterating Oklahoma's rule that ineffective assistance of trial counsel is generally waived if not presented on direct appeal and stating that "post-conviction petitioners

desire full review of technically waived substantive claims, and they have discovered that an ineffective assistance of appellate counsel allegation may achieve this goal"), *cert. denied*, —— U.S. ——, 117 S.Ct. 2524, 138 L.Ed.2d 1024 (1997); *Carrington v. State*, 678 N.E.2d 1143, 1148 (Ind.Ct.App.1997) (although ineffective assistance of trial counsel is "known and available" on direct appeal "as a general rule," issue was "preserved" by challenging appellate counsel's decision not to raise effectiveness of trial counsel on direct appeal), *trans. denied*, 683 N.E.2d 596 (Ind.1997) (table).

er, for at least two reasons, the right to challenge appellate counsel's performance is not equivalent to a direct challenge to trial counsel's representation.

First, ineffective assistance of appellate counsel requires the petitioner to overcome the double presumption of attorney competence at both trial and appellate levels. This is no mere quibble. Appellate lawyers must make difficult judgment calls in narrowing a broad range of possible claims to a select few that are thought to have the best chance of success. In this winnowing process, possibly valid claims may be eliminated due to page limits, time limits on oral argument, or the strategic judgment that the perceived strongest contentions not be diluted. Accordingly, there are situations in which a claim of ineffective assistance of trial counsel will succeed on the merits but fail if forced to overcome the presumption of effective appellate counsel. *See Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (United States Constitution does not require appellate counsel to argue all nonfrivolous claims; appellate counsel noted possible claim of ineffective assistance of trial counsel but declined

to raise the issue). Indeed, we recently emphasized that reviewing courts "should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others" and "particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy[.]" *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind.1997). Other courts have made similar observations. *See, e.g., Page v. United States*, 884 F.2d 300, 302 (7th Cir.1989) ("The threshold question is not whether trial counsel was inadequate but whether trial counsel was so *obviously* inadequate that appellate counsel had to present that question to render adequate assistance.").[21]

Second, in elaborating the right to effective assistance of appellate counsel, the Supreme Court of the United States has never suggested that counsel must look outside the record for possible claims of error for the performance to be constitutionally effective.[22] To the contrary, courts adjudicating appellate ineffectiveness claims have rejected imposing this burden on appellate counsel. *See, e.g., Kitt v. Clarke*, 931 F.2d 1246, 1249–

---

**21.** *See generally* John M. Burkoff & Hope L. Hudson, Ineffective Assistance of Counsel § 9.04 (1998) (collecting additional cases). *See also Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (counsel's tactical decision not to pursue possibly meritorious claim on direct appeal in state court was not "cause" for the default so as to allow the claim to be addressed on the merits in federal habeas proceedings).

**22.** *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) settled that a state must provide appellate counsel to criminal defendants on a first appeal as of right. *See also M.L.B. v. S.L.J.*, 519 U.S. 102, 113, 117 S.Ct. 555, 562, 136 L.Ed.2d 473, 485 (1996) (right applies when defendant faces incarceration) (citing *Douglas* ). *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) held that this assistance must be effective assistance to satisfy the Fourteenth Amendment. *Evitts*, however, explicitly declined to spell out the precise contours of what an appellate lawyer must do for the assistance to be constitutionally effective. *Id.* at 392, 105 S.Ct. 830. Subsequent case law on when appellate counsel may withdraw due to the frivolous nature of the appeal is illuminating. Federal constitutional guarantees are met so long as the appellate court, in granting the motion to withdraw, "satisf[ies] itself that the attorney has provided the client with a diligent and thorough

search of the record for any arguable claim that might support the client's appeal. Second, it must determine whether counsel has correctly concluded that the appeal is frivolous." *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988). This rule has its origins in *Anders v. California*, 386 U.S. 738, 745, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); where the Supreme Court stated that a letter from counsel to the appellate court certifying that the record had been reviewed and presented no colorable grounds for reversal "would tend to protect counsel from the constantly increasing charge that he was ineffective and had not handled the case with that diligence to which an indigent defendant is entitled." *Anders* was a "limited exception to the requirement articulated in *Douglas* .... [O]nce a court determines that the trial record supports arguable claims, there is no basis for the exception...." *Penson v. Ohio*, 488 U.S. 75, 83–84, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). If appellate counsel may withdraw consistent with the United States Constitution where the record presents no appealable issues, *a fortiori* counsel can limit claims of error to those supported by the record and satisfy the defendant's right to effective appellate counsel. *See also id.* at 91, 109 S.Ct. 346 (Rehnquist, C.J., dissenting) (agreeing with the majority that "the filing of an *Anders* brief creates strong presumption that counsel has diligently worked on the case").

50 (8th Cir.1991) ("Given that the jury separation issue was not preserved in the record, appellate counsel's failure to raise the issue cannot be considered deficient performance."); *Wilson v. State*, 565 N.E.2d 761, 764 (Ind.Ct.App.1990) (where appellate counsel did not investigate trial counsel's effectiveness other than by thoroughly reviewing the record, appellate counsel acted consistent with "accepted practice then prevailing"). This Court has also resisted that view. *See Bieghler*, 690 N.E.2d at 199–200 (appellate counsel's failure to raise issues not apparent on the face of the record, in light of overall performance, was not grounds for reversal). *Cf. Gray v. Greer*, 800 F.2d 644, 647 (7th Cir.1986) ("When a claim of ineffective assistance of counsel is based on failure to raise issues on appeal, we note it is the exceptional case that could not be resolved on an examination of the record alone."). Because there is no constitutional requirement for appellate counsel to search outside the record for error, an ineffective assistance of appellate counsel claim that is in substance a trial counsel claim requiring extrinsic evidence may be dead on arrival.

In short, a claim of ineffective assistance of appellate counsel is not an adequate back door to a full adjudication of ineffectiveness of trial counsel.

### VI. Merits of the Conflict of Interest Claim

Because Woods did not challenge the adequacy of his trial representation on direct appeal, *Woods v. State*, 547 N.E.2d 772 (Ind. 1989), *aff'd on reh'g*, 557 N.E.2d 1325 (Ind. 1990), his ineffective assistance claims are not waived. With respect to the merits, Woods argues that he was denied effective assistance of counsel because his first trial counsel, Charles Rhetts Jr., had a conflict of interest. Woods was charged with murder and robbery on April 9, 1984 and the State soon filed a request for the death penalty. Citing an undeveloped possible conflict of interest because he had previously represented an expected witness for the State in a

different matter, Rhetts requested a conference with the court. A meeting in the trial court's chambers was also attended by the prosecutor. Successor counsel Allen Wharry was initially at the meeting but left the room after Rhetts asked that Wharry not be present for the disclosure. In Wharry's absence, Rhetts told the trial court that the witness in question was Woods' mother. Rhetts later explained to the postconviction court that he believed he could not reveal even the fact of his prior representation of the mother to Wharry, much less any details of the representation. On October 25, 1984, the court permitted Rhetts to withdraw. The court did not hold a hearing on the record or otherwise inform Woods or his new lawyers (Wharry and co-counsel Douglas Johnston) of the nature of the conflict. All they knew was that Rhetts had been allowed to withdraw due to a possible conflict. Opening statements in the trial began four months later on February 22, 1985. As expected, the mother testified for the State regarding her son's involvement in the crimes.

Woods' argument, although not a model of clarity, appears to consist of four main assertions: (1) Rhetts' disclosure of the nature of the conflict in general terms in the presence of the prosecutor, but not to Woods or his new lawyers, gave the State an unfair tactical advantage in preparing to question Woods' mother; (2) Rhetts, presumably due to the conflict, did little investigation or other preparation for trial; (3) the conflict tainted the rest of the proceedings because the time Rhetts dawdled away before disclosing the conflict was charged to Woods, leaving Wharry and Johnston with only a few months to prepare for trial; and (4) the new lawyers' failure to discover the conflict constituted ineffective assistance. The State responds that Woods received effective assistance because Wharry and Johnston rendered conflict-free representation after Rhetts withdrew and the conflict did not affect Rhetts' or the latter lawyers' performance.[23]

**23.** The postconviction court is required to make specific findings of fact and conclusions of law on all issues presented in the postconviction petition to facilitate meaningful appellate review. Ind. Post–Conviction Rule 1(6); *State v. Van*

*Cleave*, 681 N.E.2d 181 (Ind.1997), cert. denied, — U.S. ——, 118 S.Ct. 1060, 140 L.Ed.2d 121 (1998). The court here held Woods' conflict of interest argument to be waived for failure to raise the issue on direct appeal. Faced with no

The federal constitutional right to effective assistance of counsel necessarily includes representation that is free from conflicts of interest. *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). To establish a violation of the Sixth Amendment due to a conflict, a defendant who failed to raise the objection at trial must demonstrate that trial counsel had an actual conflict of interest and that the conflict adversely affected counsel's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (discussing *Cuyler*). Once the two prongs of *Cuyler* are met—actual conflict and adverse impact—prejudice is presumed. *Burger v. Kemp*, 483 U.S. 776, 783, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987). An adverse effect on performance caused by counsel's failure to act requires a showing of (1) a plausible strategy or tactic that was not followed but might have been pursued; and (2) an inconsistency between that strategy or tactic and counsel's other loyalties, or that the alternate strategy or tactic was not undertaken due to the conflict. *Winkler v. Keane*, 7 F.3d 304, 309 (2d Cir.

1993) (adopting test followed by First and Third Circuits). *See also Cates v. Superintendent, Indiana Youth Center*, 981 F.2d 949, 955 (7th Cir.1992) ("The premise of a defendant's claim that he was denied conflict-free assistance ... must be that his lawyer would have done something differently if there was no conflict.").[24]

The State asserts that Rhetts' predicament did not rise to the level of an "actual" conflict because he never questioned Woods' mother under oath. Indeed, Rhetts explained in postconviction that he was aware of the possibility of the conflict months before he withdrew, but did nothing because he believed the conflict would not be a problem until trial approached. Whether the conflict was "potential" or "actual" is academic because, even assuming an actual conflict,[25] Woods has not established an adverse effect on his counsel's performance. First, he has not explained what the State could have learned at the meeting in which Rhetts asked to withdraw that so upset the possibility of a fair trial. Rhetts disclosed no details of the prior representation. Second, contrary to Woods' contention, Rhetts did not sit

findings on the merits, we can remand for further proceedings in the postconviction court, as in *Van Cleave*, or rule on the merits of the claim. Because the facts underlying the claim are not in dispute and the matter is fully briefed by both sides, we rule on the merits in the interests of judicial economy. *Lowe v. State*, 455 N.E.2d 1126, 1128 (Ind.1983). "The issue is sufficiently presented for our review in accordance with the purposes of the post-conviction rule." *Shackelford v. State*, 486 N.E.2d 1014, 1018 (Ind.1986).

24. *Cuyler* is one of many Supreme Court cases dealing with the particular conflict of interest concerns presented by joint representation of co-defendants in the same proceeding. *See also Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Our decisions, however, have applied *Cuyler* to other factual situations involving the representation of a defendant by a lawyer who had previously represented prosecution witnesses. *See, e.g., Spranger v. State*, 650 N.E.2d 1117, 1124 (Ind.1995); *Whittle v. State*, 542 N.E.2d 981, 985–87 (Ind.1989). So has the Supreme Court. *See Burden v. Zant*, 510 U.S. 132, 114 S.Ct. 654, 126 L.Ed.2d 611 (1994) (counsel represented defendant and prosecution witness at the same time before trial). Accordingly, *Cuyler* is the proper standard to apply to Woods' claim. Some federal circuits regard Supreme Court doctrine on conflicts of interest as universally applicable to all conflicts situations.

*United States v. Levy*, 25 F.3d 146, 153 n. 5 (2d Cir.1994).

25. Rhetts had represented Woods' mother in a CHINS (child in need of services) proceeding related to three of her other children. The result of the proceeding was that she was allowed to keep custody of the children but under considerable supervision by the welfare department. The mother had also consulted with Rhetts prior to the murder about a possible tort lawsuit arising out of an automobile accident (the suit was never filed). Because the CHINS proceeding presumably implicated the mother's fitness as a parent— a possible issue in the mitigation stage if Woods was found guilty—Rhetts' position was certainly a "potential" conflict. As Justice Marshall put it in discussing the difference between potential and actual conflicts in the context of joint representation: "There is the possibility of a conflict, then, if the interests of the defendants may diverge at some point so as to place the attorney under inconsistent duties. There is an actual, relevant conflict of interests if, during the course of the representation, the defendants' interests do diverge with respect to a material factual or legal issue or to a course of action." *Cuyler*, 446 U.S. at 356 n. 3, 100 S.Ct. 1708 (Marshall, J., concurring in part).

idle for the six months that he was on the case. Although he had not prepared for a possible penalty phase, he investigated Woods' sanity and competency to stand trial, filed a standard discovery request, and secured a change of venue due to adverse pretrial publicity arising out of the trial of co-defendant Greg Sloan. While not perfect representation in a capital case, at the pretrial stages this is not the stuff of adversely affected performance. *Cf. Thompkins v. State*, 482 N.E.2d 710, 713 (Ind.1985) (counsel's representation was not adversely affected where he conducted thorough discovery and filed numerous motions and objections on defendant's behalf).

Third; and not surprisingly, Woods fails to direct our attention to evidence supporting his assertion that the conflict tainted the rest of the proceedings. There is no claim that the new lawyers had a conflict and Woods has not explained how Wharry and Johnston would have handled the case differently if they had been told of or discovered Rhetts' conflict. Any information Rhetts possessed about the mother was presumably privileged. Even if Rhetts' prior representation of the mother precluded him from fully probing her possible involvement in the crime, as Woods contends, Wharry and Johnston deposed her on that subject and had adequate opportunity to investigate that issue. More generally, the trial court granted the new lawyers' request for a continuance to give them more time to prepare, and this Court held on direct appeal that the failure to grant additional continuances was not error: "There is no basis in the record upon which to conclude that additional time for preparation and consultation would have better equipped defense counsel to represent their client." *Woods*, 547 N.E.2d at 788. Thus we cannot accept that the conflict structurally infected the rest of the proceedings.

Woods would have us overlook the fact that Rhetts withdrew nearly four months before trial. This is a critical point. Because successor counsel Wharry and Johnston planned and executed their defense strategy after their own discovery, pretrial motions, and consultations with Woods, any claim that Rhetts' inaction likely affected their performance—or, for that matter, the fairness of the trial—requires more than a bald allegation. Woods in effect asks us to presume ineffectiveness and an unfair trial where initial trial counsel withdraws due to a conflict. There is no such presumption. Accordingly, his claim that he was denied effective assistance due to Rhetts' prior representation of his mother fails.

## VII. Woods' Remaining Ineffectiveness Claims

Woods alleges a plethora of other deficiencies in the handling of his case and argues that the postconviction court erred in finding that he received effective assistance of counsel. To establish a violation of the Sixth Amendment right to effective assistance of counsel, the defendant must show that (1) counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. More recently, the Supreme Court of the United States held that prejudice resulting from ineffective assistance is not established unless the error rendered the result of the proceeding fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The two prongs of *Strickland* are separate and independent inquiries; hence "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

Consistent with this directive, we assume, without deciding, that Woods could establish that trial counsel's performance fell below prevailing professional norms in one or more respects.[26] Woods nonetheless must show a

---

**26.** This should not be taken to question the efforts of trial counsel in this case. Woods received a vigorous, if not perfect, defense. Nu-

merous objections were made on his behalf at trial and raised on direct appeal. *Woods v. State*, 547 N.E.2d 772 (Ind.1989), *aff'd on reh'g*, 557

reasonable probability of a different result but for the alleged errors. The postconviction court found in detailed findings that Woods had not shown prejudice. There is no need to repeat these findings here. It suffices to say that Woods makes no colorable claim that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion as to the required showing of prejudice. For that reason alone, we affirm the denial of postconviction relief. *Spranger v. State,* 650 N.E.2d 1117, 1119–20 (Ind.1995).

The individual incidents of allegedly deficient performance are too numerous to list or even summarize here. The brief filed on behalf of Woods deals with nearly every action or inaction by trial counsel, but makes no effort to establish prejudice from the supposed errors. At one point, Woods even suggests that proof of prejudice is not required and refers to the postconviction court's finding that no prejudice was shown on a particular point as the "incorrect legal standard" to apply in determining whether the Sixth Amendment was violated. Woods, not the postconviction court, is incorrect on that point. We are aware that the "duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case." *Burger v. Kemp,* 483 U.S. 776, 785, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987). Nonetheless, Woods' failure to point to anything contradicting the postconviction court's finding of lack of prejudice permits an uncomplicated disposition of the rest of the appeal notwithstanding the serious nature of the proceedings.

Because this is a death penalty case, and for that reason only, we briefly address the ineffectiveness claims, roughly in the order that they are presented but with some consolidation due to redundant argument. Woods first alleges a variety of areas of possible investigation that were not but might have been pursued. The postconviction court found no prejudice from any of these and no serious contention is made attacking that finding.

N.E.2d 1325 (Ind.1990). We accordingly assume deficient performance only for the purpose

Although several challenges related to jury selection were preserved and rejected on direct appeal, *Woods,* 547 N.E.2d at 785–86, 791, Woods argues that counsel's handling of voir dire fell below prevailing professional norms. The objections to counsel's performance in voir dire include fifteen shortcomings identified by Woods' expert on death penalty defense standards in the postconviction court. Woods concludes his discussion of this list by complaining that the postconviction court "failed to explore the issues of whether any jurors actually were seated who should not have been." He fails to explore that subject in this appeal and for that reason presents no claim for reversal.

Woods next attacks the content of counsel's opening and closing arguments at the guilt phase, as well as other tactical trial decisions (e.g., failure to cross-examine witnesses or object to evidence, and failure to argue theories such as sudden heat that were supposedly more consistent with the mitigation evidence). Woods seeks to avoid the obvious point that classic tactical choices of this sort hardly ever support a claim of ineffective assistance because they are matters of trial strategy, *Douglas v. State,* 663 N.E.2d 1153 (Ind.1996), by contending that counsel's performance was so uninformed that no presumption of strategic decision should attach. However, Woods has not elaborated how any alternative argument or tactic would possibly, much less reasonably probably, have changed the outcome. Trial counsel Johnston testified in postconviction that "we honestly felt we had a very difficult case. It was very difficult to win on the guilt phase." Woods concedes in this appeal that there was "overwhelming evidence of his participation in the crime." In light of the powerful evidence of guilt—including a confession held on direct appeal to have been properly admitted, *Woods,* 547 N.E.2d at 786–87—we cannot say that the convictions were a fundamentally unfair or unreliable result. *Fretwell,* 506 U.S. at 369, 113 S.Ct. 838.

of resolving the *Strickland* inquiry in this appeal.

Woods next points to numerous alleged omissions at the penalty phase, including failure to give an opening statement or call Woods to the stand, failure to assemble and present a complete social or life history of Woods for mitigation purposes, and failure to make an effective presentation of the mitigation evidence that was gathered. The argument (not unfamiliar in postconviction) boils down to (1) counsel should have done more; and (2) counsel was ineffective with respect to what little was done. Neither contention withstands scrutiny here. As noted, counsel's choices related to opening or closing argument—and, for that matter, the decision whether the defendant should testify—are strategic calls that will rarely support a Sixth Amendment violation. Indeed, counsel Johnston testified in postconviction that he feared Woods would be "beat up" by the prosecutor if he took the stand.

▮ With respect to the mitigation evidence, the postconviction court found that the evidence offered at the postconviction hearing was cumulative of the evidence presented at trial. Woods' contention to the contrary is wholly conclusory; and he concedes that at least some of this evidence was duplicative. In any event, Woods has not explained what any witness would have said, or any investigation would have uncovered, that might have led to a different sentence. He focuses on postconviction testimony illustrating difficulties in his upbringing, particularly related to his abusive mother. These arguments were not only made at trial but credited: on direct appeal we agreed with the trial court's determination that Woods' "turbulent childhood" was a "significant mitigating circumstance." *Woods*, 547 N.E.2d at 782. Thus, even assuming the postconviction evidence on this point was not cumulative,

prejudice has not been proved because Woods' surroundings were accepted as a mitigating factor at sentencing without the postconviction testimony. *See also Hough v. State*, 690 N.E.2d 267, 272 (Ind.1997) (prejudice was not established because defendant's personality disorder and abusive family background were not necessarily entitled to mitigating weight), *petition for cert. filed*, 67 U.S.L.W. 3362 (U.S. July 23, 1998) (No. 98–5826).[27]

The next contention is that the postconviction court erred in summarily dismissing several claims alleging that "numerous procedural, constitutional and instructional issues" not litigated either at trial or on direct appeal supported a finding of ineffective assistance of counsel. In the eight pages devoted to this argument, nowhere does Woods explain what these "issues" are. Rather, he incorporates the claims by reference by listing the relevant postconviction court findings on these "issues" in a footnote. It is apparent from the findings that some of the arguments—such as allegedly deficient handling of voir dire—duplicate Woods' other claims. Others (e.g., prosecutorial misconduct) were resolved against Woods on direct appeal. For each argument, the postconviction court found that Woods offered no evidence or authority to support his contention or failed to show a reasonable probability of a different result but for the error. Because Woods points to nothing in the record showing these findings to be clearly erroneous, this presents no basis for reversal.

Woods' remaining ineffectiveness claims are miscellaneous in nature and, because they are meritless, amenable to summary disposition. Woods raises a laundry list of undeveloped challenges to the jury instruc-

---

**27.** Supposedly new evidence—e.g., the claim that Woods' mother essentially masterminded the murder and that he killed due to his rage towards her—falls far short of establishing a reasonable likelihood of a different result. We accept the postconviction court's finding that these allegations were available at trial; counsel cannot be condemned in hindsight for not arguing a dubious theory inconsistent with the evidence. We also find no basis for relief in counsel's numerous references to the jury's role in capital sentencing as a "recommendation." Informing the jury that its capital sentencing verdict is a

"recommendation" does not diminish the jury's role in the process so as to violate the Eighth Amendment. *Hough*, 690 N.E.2d at 270; *Holmes v. State*, 671 N.E.2d 841, 855 (Ind.1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 137, 139 L.Ed.2d 85 (1997). Moreover, counsel's comments at the penalty phase were made in the context of emphasizing that the jury's decision was of paramount importance. This is completely consistent with the jury's role in our death penalty scheme. *Saylor v. State*, 686 N.E.2d 80, 87 (Ind.1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 84, 142 L.Ed.2d 66 (1998).

tions. It is difficult to determine whether these claims allege ineffective assistance for failure to object to or proffer a particular instruction, or are direct (and thus untimely) challenges to rulings at trial on instructing the jury. These arguments, if not defaulted for failure to raise them as free standing claims on direct appeal,[28] are waived for lack of cogency and failure to cite to the record. *Armstead v. State*, 538 N.E.2d 943, 945 (Ind. 1989). Finally, Woods contends that the postconviction court erred in finding certain claims to be *res judicata* because they were or could have been raised on direct appeal. Woods maintains that his petition for postconviction relief asked that these issues be addressed as both free standing claims and ineffective assistance for failure to raise each issue on direct appeal; therefore the finding of procedural default was error. This assertion presents no basis for reversal.[29]

### Conclusion

David Leon Woods received effective assistance of counsel in conformity with the Constitution of the United States. The denial of his petition for postconviction relief is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.

---

**28.** We addressed and rejected several challenges to the jury instructions on direct appeal. *Woods,* 547 N.E.2d at 783–85, 791–92. The postconviction court found all claims related to jury instructions to be *res judicata,* waived for failure to present evidence on the issue, or meritless due to lack of any showing of prejudice.

**29.** Of the claims found to be defaulted, the postconviction court ruled that the first two arguments, in addition to being *res judicata,* presented no grounds for relief because prejudice had not been shown. Woods does not dispute that conclusion. The remaining claims found to be *res judicata* largely duplicate claims that were either (1) dealt with on direct appeal (competency to stand trial, weighing of mitigating and aggravating factors, prosecutorial misconduct, constitutional challenges to the single aggravating circumstance); or (2) rejected elsewhere in the postconviction court's findings or in this appeal (mishandling of voir dire, challenges related to jury instructions). The few claims that are not cumulative of others already addressed—e.g., that Woods' lawyers had inadequate resources to present a vigorous defense—do not support reversal because Woods does not contend that the supposedly deficient performance prejudiced the trial outcome.