Alton COLEMAN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 45S00–9203–PD–158.

Supreme Court of Indiana.

Dec. 29, 2000.

Rehearing Denied March 20, 2001.

Susan K. Carpenter, Public Defender of Indiana, Kathleen Cleary, Deputy Public Defender, Robert E. Lancaster, Special Assistant to the Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

Alton Coleman was last before us in a proceeding for post-conviction relief. We affirmed the trial court's denial of relief, holding among other things that Coleman was not denied ineffective assistance of counsel. The U.S. Supreme Court granted certiorari, and remanded to us for reconsideration in light of *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

On April 11, 1986, a jury found Alton Coleman guilty of murder, attempted murder and child molesting. Coleman and a companion lured two young girls into a wooded area, and bound and gagged them. *Coleman v. State,* 558 N.E.2d 1059, 1060 (Ind.1990) (*"Coleman I "*). They stomped and strangled the seven-year-old child to death after she began crying. They strangled and sexually brutalized the nine-year-old and left her for dead, though she survived. *Id.* Following the jury's recommendation, the court sentenced Coleman to death. We affirmed on direct appeal. *Id.* Subsequently, we affirmed the denial of Coleman's petition for post-conviction relief. *Coleman v. State,* 703 N.E.2d 1022 (Ind.1998) (*"Coleman II "*).

The U.S. Supreme Court granted certiorari, *Coleman v. Indiana,* 529 U.S. 1085, 120 S.Ct. 1717, 146 L.Ed.2d 639 (2000), and remanded to this Court for reconsideration in light of *Williams,* 529 U.S. 362, 120 S.Ct. 1495, in which Williams claimed, as does Coleman, ineffective assistance of

counsel ("IAC"). *Williams,* 529 U.S. at 367, 120 S.Ct. at 1499.[1]

In *Williams,* the U.S. Supreme Court reversed the Virginia Supreme Court and vacated Williams' death sentence because Williams' trial counsel failed to adequately investigate and present mitigating circumstances during the penalty phase of the trial. *Id.* at 398–99, 120 S.Ct. at 1516. Applying the two-part IAC test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the U.S. Supreme Court held that this failure amounted to constitutionally deficient performance under the Sixth Amendment, and also prejudiced the defense to the point of depriving Williams of a fair trial with a reliable result. *Id.* at 389–90, 398–99, 120 S.Ct. at 1511, 1515.

The *Williams* opinion clarified the Court's earlier decision in *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), emphasizing that *Lockhart* did not modify the two-pronged *Strickland* analysis that focuses on (1) deficient performance by counsel and (2) resulting prejudice. *Williams,* 529 U.S. at 391–92, 120 S.Ct. at 1512. In *Lockhart,* the defendant sought relief based on his attorney's failure to make an objection at his sentencing proceeding. *Lockhart,* 506 U.S. at 366, 113 S.Ct. 838. The objection was sustainable under case law at the time of the proceeding, but that law was later overruled. The U.S. Supreme Court refused to grant the defendant a "windfall" based on fortuitous timing, and held that he had suffered no prejudice within the meaning of *Strickland* because the sentencing result was neither unreliable nor fundamentally unfair. *Id.* This set of circumstances was inapplicable in *Williams,* 529 U.S. at 393–94, 120 S.Ct. at 1513, and it is similarly inapplicable here.

The *Williams* Court clarified that the focal concern in *Lockhart,* i.e. whether the result of the proceeding was fundamentally fair, is not a discrete third prong of the IAC analysis. *Williams,* 529 U.S. at 391–92, 120 S.Ct. at 1512. Rather, it enters into the determination of whether the likelihood of a different outcome qualifies as prejudice in the *Strickland* sense. *Id.*

In his petition for post-conviction relief, Coleman claimed ineffective assistance by both his trial and his appellate counsel. *Coleman II,* 703 N.E.2d at 1026. We rejected these claims, citing and applying the two-prong *Strickland* standard but also referring to the caveat in *Lockhart* that "a different outcome but for counsel's error will not constitute prejudice if the ultimate result reached was fair and reliable." *Id.* at 1028 (citations omitted). We now revisit the IAC issues raised by Coleman, applying the two-prong *Strickland* standard based on the most recent guidance provided in *Williams.* Our holdings on all other issues remain the same, and they stand.

### The Standard of Review

As a threshold matter, we reject Coleman's claim that he is entitled to de novo review because he presents mixed questions of law and fact. (Appellant's Remand Br. at 4.) Coleman is correct that the U.S. Supreme Court said in *Strickland* that "both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Strickland,* 466 U.S. at 698, 104 S.Ct. 2052. In *Williams,* however, the Court accepted that "[t]reating the prejudice inquiry as a mixed question of law and fact, the Virginia Supreme Court accepted the factual determination that available evidence in mitigation had not been presented at the trial...." *Williams,* 529 U.S. at 371, 120 S.Ct. at 1501.

1. The U.S. Supreme Court's order of remand directs us to *Williams v. Taylor,* 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). However, that case addresses issues not presented in *Coleman II.* We have assumed that the order intended to direct us to *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), decided the same day, which does deal with issues relevant to *Coleman II.*

■ We see nothing in *Williams* to alter the standard of review we apply to appeals of judgments denying post-conviction relief. We will reverse a negative judgment after a non-jury trial only if "the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the postconviction court." *Woods v. State,* 701 N.E.2d 1208, 1210 (Ind.1998) (citing *Spranger v. State,* 650 N.E.2d 1117, 1119–20 (Ind.1995)), *cert. denied,* 528 U.S. 861, 120 S.Ct. 150, 145 L.Ed.2d 128 (1999).[2] We accept findings of fact unless they are clearly erroneous, although we give conclusions of law no deference. *Woods,* 701 N.E.2d at 1210. The post-conviction court is the sole judge of the weight of evidence and credibility of witnesses. *Id.*

## I. Ineffective Assistance of Trial Counsel

The post-conviction court held that Coleman's claim of ineffective assistance of trial counsel was waived because it was not raised on direct appeal. *Coleman II,* 703 N.E.2d at 1027. Subsequently, however, we held in *Woods v. State,* 701 N.E.2d at 1220, that Sixth Amendment claims of ineffective assistance of trial counsel not raised on direct appeal may be raised in post-conviction proceedings. Therefore, in *Coleman II,* we addressed Coleman's claim of ineffective assistance of trial counsel, but rejected it as a matter of law because Coleman's offers of proof failed to establish any of his specific assertions. *Coleman II,* 703 N.E.2d at 1028. We revisit those conclusions below, applying the two-pronged *Strickland* analysis.

■ *A. Failure to Investigate and Present Mitigating Evidence at the Penalty and Sentencing Phase.* Coleman argues that his lawyer was ineffective in failing to present potentially mitigating evidence related to his troubled childhood environment and to his mental illness and personality disorder. (Appellant Remand Br. at 11–14.) On the latter issue, Coleman argues that he was prejudiced by his counsel's failure to present evidence of his personality disorder and brain dysfunction. (*Id.* at 13–14.) The post-conviction court, however, after hearing extensive evidence on both sides of the issue, found that Coleman does not suffer from either disorder. *Coleman II,* 703 N.E.2d at 1032, (P–C.R. at 1744–45). Applying a pure *Strickland* analysis, the post-conviction court concluded that, had this evidence been presented, it would not have made a difference to the outcome of the trial or sentencing. *Coleman II,* 703 N.E.2d at 1032, (P–C.R. at 1744). We agree that Coleman suffered no prejudice under *Strickland* from his counsel's failure to argue mental defect or personality disorder as a mitigating factor in sentencing.[3]

■ Coleman's claim rests, then, on the mitigating evidence he offered at the post-conviction proceeding relating to his troubled childhood. As noted in *Coleman II,* 703 N.E.2d at 1031, this court has consistently held that evidence of a difficult childhood warrants little, if any, mitigating weight. *See Peterson v. State,* 674 N.E.2d 528, 543 (Ind.1996) (mitigating weight warranted by a difficult childhood is in the low range), *cert. denied,* 522 U.S. 1078, 118 S.Ct. 858, 139 L.Ed.2d 757 (1998); *Loveless v. State,* 642 N.E.2d 974,

2. *See also Harrison v. State,* 707 N.E.2d 767, 774 (Ind.1999)("We will disturb the decision only if the evidence is without conflict and leads only to a conclusion contrary to the result of the post-conviction court.") (citation omitted), *cert. denied,* 529 U.S. 1088, 120 S.Ct. 1722, 146 L.Ed.2d 643 (2000); *Miller v. State,* 702 N.E.2d 1053, 1058 (Ind.1998), *cert. denied,* 528 U.S. 1083, 120 S.Ct. 806, 145 L.Ed.2d 679 (2000).

3. We note also that the trial court ordered Coleman's transfer to a diagnostic center for a psychological and psychiatric evaluation prior to sentencing, to better determine "the nature of the offender...." (T.R. at 2619.) Coleman objected, however, and the evaluation did not occur. (*Id.*)

977 (Ind.1994) (some such evidence is occasionally declared not mitigating at all).

Nonetheless, it is certainly true that "evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." *Penry v. Lynaugh,* 492 U.S. 302, 319, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (quoting *California v. Brown,* 479 U.S. 538, 545, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987) (O'Connor, J. concurring)). Childhood abuse and privation may, along with other mitigators, "influence[ ] the jury's appraisal of [ ] moral culpability." *Williams,* 529 U.S. at 398, 120 S.Ct. at 1515.

Unlike Coleman's claim of mental illness and personality disorder, we have no findings of fact from the post-conviction court regarding the evidence Coleman offered about the circumstances of his youth. At the post-conviction proceeding, Coleman offered testimony, *inter alia,* that his mother was a gambler and a prostitute who "starved, beat & hustled" her children. (P–C.R. at 3683, 3793–94.) Coleman spent most of his childhood in conditions of squalor, living with a grandmother who practiced voodoo and who told Coleman that his mother had discarded him in a trash can when he was born. (P–C.R. at 3717, 3772, 3681.) The grandmother verbally vilified and physically beat Coleman. (P–C.R. at 3760, 3684.) She addressed him by his widely-known nickname "Pissy" because Coleman had bedwetting problems through his early teens. (P–C.R. at 3684.) In summary, Coleman proffered evidence that he grew up neglected and abused.

We cannot effectively evaluate the credibility of this evidence from a cold record. We therefore assume its truth for purposes of analysis, to determine whether a remand for factual findings is necessary.

We begin with the second prong of *Strickland,* the issue of prejudice.[4] The focus of this inquiry is whether, had Coleman's counsel offered evidence of Coleman's troubled childhood at the penalty phase of the trial, there is a reasonable probability that the result would have been different, i.e., that Coleman would have avoided a death sentence. *Strickland,* 466 U.S. at 695, 104 S.Ct. 2052. We look to the factual circumstances in *Williams* for guidance in our assessment.

*Omitted Mitigating Evidence.* In *Williams,* counsel failed to present evidence

> that Williams' parents had been imprisoned for the criminal neglect of Williams and his siblings, that Williams had been severely and repeatedly beaten by his father, that he had been committed to the custody of the social services bureau for two years during his parents' incarceration (including one stint in an abusive foster home), and then, after his parents were released from prison, had been returned to his parents' custody.

*Williams,* 529 U.S. at 395, 120 S.Ct. at 1514. In addition, Williams was "borderline mentally retarded" and did not advance beyond the sixth grade in school. *Id.* Williams' counsel also failed to offer prison records and credible testimony showing that Williams thrived in a structured prison environment. *Id.*

Coleman, by contrast, has offered no evidence that he would be a model prisoner. In fact, he was charged with raping another inmate, and convicted of the lesser offense of battery, while he was incarcerated in 1976. (T.R. at 2620.) Nor has Coleman offered evidence of retardation. He attended school through the ninth grade, (P–C.R. at 4121), and in a competency hearing held prior to his trial, two court-appointed psychiatrists found Coleman to

---

**4.** The U.S. Supreme Court advised in *Strickland* that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052.

be above average in intelligence. (T.R. at 2631.) The only omitted mitigation evidence that Coleman offers is that he, like Williams, suffered a childhood "filled with abuse and privation." *Williams*, 529 U.S. at 398, 120 S.Ct. at 1515; *Coleman II*, 703 N.E.2d at 1031.

*Sentencing Evidence Presented.* In *Williams*, the defendant struck his victim with a mattock and took a small sum of money from the victim's wallet after the victim refused Williams' loan request. *Williams*, 529 U.S. at 367–68, 120 S.Ct. at 1499. Williams was convicted and sentenced to death after he spontaneously confessed to the murder, which had been written off as a death from blood alcohol poisoning. *Id.* Williams expressed remorse, and cooperated with the police. *Id.* Unlike Williams, Coleman did not confess, did not express regret, and did not cooperate in the investigation.

In both *Williams* and *Coleman*, the State offered evidence of the defendants' other crimes. Williams had previously committed armed robbery, burglary, grand larceny, arson, two auto thefts, and two violent assaults on elderly victims. *Williams*, 529 U.S. at 368–69, 120 S.Ct. at 1500. Coleman's sentencing court similarly noted Coleman's extensive record of violent criminal activity. This included convictions for robbery and battery, and pending charges for rape, child molesting, two kidnappings, multiple robberies and burglaries, three assaults, two attempted murders, and seven murders. (T.R. at 2614, 2621.) Also, unlike in *Williams*, Coleman had two prior murder convictions. (T.R. at 2419–20.)

As mitigating evidence, Williams' counsel primarily emphasized that Williams had confessed and cooperated. *Williams*, 529 U.S. at 368–69, 120 S.Ct. at 1500. However, counsel then inexplicably conceded in closing argument that "it was difficult to find a reason why the jury should spare Williams' life." *Id.*

Coleman's counsel presented no mitigating evidence, but relied instead on a general religious and moral argument against the death penalty and a request for mercy.[5] (T.R. at 2522, 2570–71.) Coleman's own statement at his sentencing hearing focused on the fairness of his trial, and ended with a request for mercy. (T.R. at 2582–87.)

*Totality of the Evidence.* The dispositive question here, as in *Williams*, is what effect the totality of the omitted mitigation evidence would have had on Coleman's sentence. *Williams*, 529 U.S. at 396–98, 120 S.Ct. at 1515. In *Williams*, the U.S. Supreme Court noted that "[t]he circumstances recited in [Williams'] several confessions are consistent with the view that in each case his violent behavior was a compulsive reaction rather than the product of cold-blooded premeditation." *Williams*, 529 U.S. at 398, 120 S.Ct. at 1515–16. Coleman's actions tell a different story. He and his companion lured two young girls into the woods to inflict egregious harm upon the children for their own sexual pleasure. Coleman neither confessed nor expressed regret for this predatory attack. Besides having committed a particularly atrocious crime, Coleman faced aggravating factors not present in *Williams:* two prior capital murder convictions.

Turning to the omitted mitigators, counsel in *Williams* could have pointed to three factors: childhood abuse and neglect, borderline mental retardation, and a record of successful incarceration. Coleman offers only one additional mitigator: a difficult childhood.

Because Williams "turned himself in, alerting police to a crime they otherwise

---

5. At the sentencing hearing, Coleman's counsel pointed out that Coleman was already under two death sentences and questioned the need for an additional death sentence given that Coleman could only die once. (T.R. at 2571.) Counsel also argued that Coleman's life should be spared in the interests of studying the criminal psyche. (T.R. at 2576–77.) We do not count either argument as mitigating.

would never have discovered," Williams 529 U.S. at 398, 120 S.Ct. at 1515, *Williams* presented a much closer sentencing decision based on the original evidence presented. It is unsurprising, then, that when the *Williams* post-conviction judge (who had imposed the original sentence) considered the three omitted mitigating factors, that judge concluded that it was reasonably probable that this information would have tipped the scales against a death sentence. *Id.*

Here, with a predatory and unrepentant defendant who had two prior capital murder convictions and no mitigating circumstances, the sentencing decision was much more clear-cut. The jury returned its recommendation in favor of the death penalty within two hours (T.R. at 2539), and the trial court discussed at length the numerous compelling aggravators and lack of mitigating circumstances (T.R. at 2618–37).

Taking into consideration all the evidence, both presented and omitted, and our previous holdings that a difficult childhood carries little mitigating weight, we conclude that it is extremely unlikely that the sentencing result would have been different had Coleman's trial counsel presented credible evidence of Coleman's childhood abuse and neglect. Because we find no reasonable probability that Coleman would have avoided a death sentence based on the omitted evidence, Coleman's claim of IAC at the penalty and sentencing phase of his trial fails under the second prong of *Strickland.*

█ *B. Mystery Hairs.* Coleman's trial counsel failed to present evidence that two hairs in a rape kit containing evidence collected from one victim belonged to neither Coleman nor his co-defendant. *Coleman II,* 703 N.E.2d at 1028. We concluded in *Coleman II* that, although there was no apparent strategic reason for not presenting this evidence, it did not constitute prejudice in the *Strickland* sense because of the magnitude of other evidence pointing to Coleman's guilt. *Id.* We also cited

*Lockhart* and found that the failure did not render Coleman's conviction unfair or unreliable. *Id.* at 1028–29. Under *Strickland* alone, we continue to hold that there was no reasonable probability that presentation of this evidence would have changed the result of the proceeding.

*C. Other Claims.* Coleman offers no argument on remand in support of his other claims of ineffective assistance of trial counsel. We take our earlier decisions on these contentions to be unaffected by the remand order, as his present lawyers apparently do.

## II. Ineffective Assistance of Appellate Counsel

█ Coleman claimed IAC due to his appellate counsel's failure to raise the issue of trial IAC and to challenge the trial court's sentencing order. *Coleman II,* 703 N.E.2d at 1032. We allowed Coleman to raise the former issue in post-conviction review. *Id.* at 1027–28. We reviewed the latter issue sua sponte on direct appeal. *Id.* at 1032. Therefore, Coleman suffered no prejudice on these points.

Coleman also claimed appellate IAC for failure to challenge certain jury instructions and to challenge denial of funds for an eyewitness identification expert. *Id.* at 1032–33. The post-conviction trial court rejected these, along with all other, claims of appellate IAC, based purely on the two-pronged *Strickland* analysis. (P–C.R. at 1713–43.) We agreed in *Coleman II,* without reference to or consideration of *Lockhart,* that Coleman failed to prove IAC on these issues. *Coleman II,* 703 N.E.2d at 1032–33.

Therefore, we continue to hold that Coleman was not denied effective assistance of appellate counsel in violation of the Sixth Amendment.

## Conclusion

We affirm the judgment of the post-conviction court.

DICKSON, SULLIVAN, and BOEHM, JJ., concur.

RUCKER, J., not participating.