**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 15 2013, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TASHA PARSONS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 16A01-1208-CR-356 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DECATUR SUPERIOR COURT
The Honorable Matthew Bailey, Judge
Cause No. 16D01-1106-MR-309

**February 15, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Tasha Parsons appeals her sixty-year executed sentence for murder. We affirm.

## Issue

The sole issue before us is whether Parson's sentence is inappropriate.

## Facts

On June 2, 2011, Parsons was living in Greensburg with her live-in boyfriend, Waldo Jones, Jr., her twelve-year-old son, D.P., and her two other, younger children. At about 10:30 p.m. on that day, Parsons and Jones awoke D.P. and accused him of having stolen from Parsons's and Jones's supply of illegally-obtained Klonopin pills. Over the course of the next ten to twelve hours, Parsons and Jones severely and repeatedly battered D.P. Parsons punched D.P. in the head, kicked him six or seven times, and stomped on his body six or seven times. She also did not interfere as Jones repeatedly punched and kicked D.P., whipped him with a belt, hit him with a TV tray, pushed him into an entertainment center, and used a cooler to repeatedly slam his head onto the floor. At one point, Parsons filled a bathtub with water and watched as Jones held D.P.'s head under the water several times demanding to know where the pills were, and also as Jones forced D.P.'s mouth under the running faucet. D.P. lost consciousness at some point, but Parsons and Jones performed CPR until they ensured that he had a pulse.

Parsons never called 911. Police were not called to Parsons's residence until about 3:30 p.m. on June 3, 2011.[1] When police arrived, they found Parsons sleeping partially on top of D.P., who was dead. An autopsy revealed that D.P.'s right arm was broken in two places, his right leg was broken, three ribs were broken, and that he had three scalp lacerations, facial swelling and burns, and lung contusions. Altogether, D.P. had "[e]xtensive contusions, abrasions, and patterned injuries over 90% of the total body surface area . . . ." Ex. 1, p. 2. Additionally, although Parsons told police that D.P. had admitted to ingesting a Klonopin pill, a toxicology screen of his blood was negative.

The State charged Parsons with murder and Class A felony neglect of a dependent. It also sought to impose the penalty of life imprisonment without parole ("LWOP") against Parsons for having allegedly tortured D.P. before his death. On June 19, 2012, Parsons pled guilty to murder, with the State dismissing the neglect of a dependent and LWOP charges against her. The plea agreement specified that Parsons would receive a sentence of sixty years, but that the trial court had the discretion to determine which portion of the sentence would be executed. On July 20, 2012, the trial court sentenced Parsons to a fully-executed term of sixty years. Parsons now appeals.

**Analysis**

Parsons argues that her fully-executed sentence of sixty years is inappropriate under Indiana Appellate Rule 7(B) in light of her character and the nature of the offense. She contends that ten years of her sentence ought to be suspended. Although Rule 7(B)

---

[1] It is unclear from the record who placed this call.

does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

The nature and circumstances of this offense are gruesome and outrageous. This case did not involve a momentary lapse of reason and a brief violent outburst. Rather, D.P. was the victim of a vicious beating that took place over ten to twelve hours and resulted in visible injuries to over 90% of his body; D.P. also was nearly drowned by

4

Jones with Parsons's assistance. This also was not a case in which only Jones committed the beatings while Parsons failed to intervene. Parsons actively participated in the beatings of her own son as well. Moreover, the beatings were prompted by an accusation that D.P. had stolen from Parsons's and Jones's illegal supply of Klonopin pills; in other words, Parsons's illegal activity was the direct catalyst for D.P.'s death. It also goes without saying that Parsons violated the greatest position of trust, the position of a parent to a child, in beating D.P. herself, in not intervening in Jones's beating of him, and in not seeking immediate medical treatment for him, allowing him to languish and die in what must have been misery. See Hamilton v. State, 955 N.E.2d 723, 727 (Ind. 2011) ("A harsher sentence is . . . more appropriate when the defendant has violated a position of trust that arises from a particularly close relationship between the defendant and the victim, such as a parent-child or stepparent-child relationship.").

Turning to Parsons's character, we acknowledge that she pled guilty. However, she received a significant benefit from the plea because of the State's agreement not to pursue an LWOP sentence against her. See Anglemyer v. State, 875 N.E.2d 218, 221 (Ind. 2007) (holding mitigating weight of guilty plea is lessened when a defendant receives a substantial benefit in return for the plea). The trial court did find Parsons to be remorseful, which is a credibility determination we will not second-guess. See Pickens v. State, 767 N.E.2d 530, 535 (Ind. 2002) (holding that trial court's finding as to remorse or lack thereof is "similar to a determination of credibility."). It also is true that before the current crime, Parsons had no criminal convictions on her record. Regardless, that does

5

not mean she lived a law-abiding life. See Drakulich v. State, 877 N.E.2d 525, 535-36 (Ind. Ct. App. 2007) (noting, in assessing defendant's character under Rule 7(B) as it related to lack of criminal history, that defendant had nonetheless not been living a law-abiding life), trans. denied. In addition to the frequent illegal use of drugs, including Klonopin, methamphetamine, and marijuana, Parsons admitted that she broke D.P.'s arm when he was four years old by throwing him down onto a coffee table. She further admitted to police that one month before D.P.'s death, she had whipped him with a belt and given him a black eye for, again, allegedly having stolen from Parsons's and Jones's illegal cache of prescription medication. In other words, Parsons admitted to having battered D.P. on at least two occasions prior to his death. There also was evidence in the record of the local office of the Department of Child Services having investigated Parsons on several occasions for her care and treatment of D.P. and her other two children in the months before his death, including for marks on the children noticed at school, although the Department did not substantiate these reports.

Despite the brutality of this crime, Parsons focuses almost exclusively upon her own troubled childhood upbringing as a reason for finding her sentence to be inappropriate; she also blames that upbringing for her drug addiction. As related by Parsons, she was frequently battered by both parents for various matters, including by her mother when she disclosed to her father an affair her mother was having. Parsons's mother told her that she wished she had gotten an abortion. Parsons's parents also abused alcohol and drugs and sometimes left Parsons to care for her six younger siblings at an

6

early age, or sometimes effectively abandoned the family altogether. Parsons also states that she was sexually fondled by a family friend, which she reported to her parents, but they took no action to report the molestation or to prevent the friend from further contact with Parsons. From the ages of twelve to sixteen, Parsons lived with an aunt and uncle, who apparently took good care of her.

No one should ever have to have a childhood like the one Parsons says she experienced. Nevertheless, we cannot say it constitutes sufficient justification for lessening the sentence she received for inflicting an even worse childhood upon D.P., indeed, for ending his childhood and his life. Indiana appellate courts traditionally have not looked favorably upon claims that a dysfunctional childhood warrants a reduced sentence. For example, the death penalty defendant in Coleman v. State, 741 N.E.2d 697 (Ind. 2000), cert. denied, proffered the following evidence of a dysfunctional childhood that is comparable with the evidence proffered by Parsons:

> [H]is mother was a gambler and a prostitute who "starved, beat & hustled" her children. Coleman spent most of his childhood in conditions of squalor, living with a grandmother who practiced voodoo and who told Coleman that his mother had discarded him in a trash can when he was born. The grandmother verbally vilified and physically beat Coleman. She addressed him by his widely-known nickname "Pissy" because Coleman had bedwetting problems through his early teens.

Coleman, 741 N.E.2d at 701. Our supreme court held that Coleman had not received ineffective assistance of trial counsel for counsel's failure to present this evidence to the jury who recommended he be sentenced to death, noting in part "our previous holdings

7

that a difficult childhood carries little mitigating weight" and that the result of the jury's deliberations were unlikely to have been different had the evidence been proffered at trial. Id. at 703.

Although Coleman concerned a claim of ineffective assistance of counsel, not independent appellate review of a sentence, the principle that a difficult childhood "'warrants little, if any, mitigating weight'" has been repeated in numerous cases, including Rule 7(B) cases. See, e.g., Patterson v. State, 909 N.E.2d 1058, 1062-63 (Ind. Ct. App. 2009) (quoting Ritchie v. State, 875 N.E.2d 706, 725 (Ind. 2007)). The unfortunate fact is that many persons in our criminal justice system had less-than-ideal childhoods. Unless and until either our supreme court or the General Assembly directs us otherwise, we will continue to hold that while defendants are certainly free to present evidence of dysfunctional childhoods to trial courts, on appeal such evidence carries little weight in evaluating the appropriateness of whatever sentence the trial court ultimately decides to impose. In sum, given the heinous and egregious nature of the offense here, we find no reason in the record to find Parsons's sixty-year fully executed sentence to be inappropriate.

**Conclusion**

Parsons's sentence is not inappropriate. We affirm.

Affirmed.

BAKER, J., and RILEY, concur.

8