## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 23 2019, 10:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Phillips
PHILLIPS LAW, P.C.
Boonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David N. Templin,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 23, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2447<br><br>Appeal from the Perry Circuit Court<br><br>The Honorable M. Lucy Goffinet, Judge<br><br>Trial Court Cause Nos.<br>62C01-1803-CM-187<br>62C01-1804-F6-305<br>62C01-1804-F6-310 |

**Bailey, Judge.**

# Case Summary

David N. Templin ("Templin") pleaded guilty to three charges: (1) Escape, a Level 6 felony;[1] (2) Impersonation of a Public Servant, a Class A misdemeanor;[2] and (3) Resisting Law Enforcement, a Class A misdemeanor.[3] He now appeals.

We affirm.

# Issues

Templin presents three issues, which we revise and restate as follows:

I. Whether, on direct appeal, Templin may seek to set aside his plea of guilty by, *inter alia*, alleging procedural error regarding the inquiry into his competency to stand trial.

II. Whether Templin received ineffective assistance of counsel due to counsel's purported failure to explore potential mental health issues and adequately present those issues as mitigating circumstances at sentencing.

III. Whether the trial court abused its sentencing discretion.

---

[1] Ind. Code § 35-44.1-3-4(b).

[2] I.C. § 35-44.1-2-6(a).

[3] I.C. § 35-44.1-3-1(a)(1).

# Facts and Procedural History

[4]    In March 2018, the State charged Templin with (1) Impersonation of a Public Servant, a Class A misdemeanor; (2) Resisting Law Enforcement, a Class A misdemeanor; (3) Unlawful Use of a Police Radio, a Class B misdemeanor;[4] and (4) Obstructing an Emergency Medical Person, a Class B misdemeanor.[5] He was released on bond and placed on electronic home monitoring. The State later filed additional charges, alleging Templin committed two Level 6 felony offenses while released: Escape and Residential Entry.[6] Thereafter, Templin moved for a competency examination. The court appointed a psychologist who examined Templin and determined Templin was competent to stand trial.

[5]    Templin and the State later reached a plea agreement whereby Templin would plead guilty to three counts—Escape, Impersonation of a Public Servant, and Resisting Law Enforcement—in exchange for dismissal of the other counts. Under the plea agreement, Templin would serve an aggregate sentence length of four years with placement left to the discretion of the trial court. Templin

---

[4] I.C. § 35-44-.1-2-7(a)(1).

[5] I.C. § 35-44.1-4-9(b).

[6] I.C. § 35-43-2-1.5.

pleaded guilty in August 2018, and the court accepted the plea.[7] The court held a hearing, dismissed the agreed counts, and ordered a fully executed sentence.

Templin now appeals.

# Discussion and Decision

## Decision to Plead Guilty

Templin complains of procedural irregularity regarding the inquiry into his competency to stand trial. He asserts—*inter alia*—entitlement to a competency hearing. Yet, Templin elected to plead guilty and thereby waived his right to trial. *See Tumulty v. State*, 666 N.E.2d 394, 395 (Ind. 1996). Templin suggests further inquiry into his competency and mental health—whether by the trial court or by counsel—might have led to (1) the court rejecting the plea or (2) a viable defense that would have affected Templin's decision to forgo trial and plead guilty. At bottom, however, these lines of argument aim toward setting aside the plea of guilty—and "[a] person who pleads guilty is not permitted to challenge the propriety of that conviction on direct appeal." *Collins v. State*, 817 N.E.2d 230, 231 (Ind. 2004). Rather, a defendant may challenge the validity of his plea only through a petition for post-conviction relief. *See Tumulty*, 666 N.E.2d at 395; *see also* Ind. Code § 35-35-1-4 (specifying that "[a] motion to

---

[7] In the written plea agreement, Templin purportedly waived his right to appeal his sentence. Yet, the trial court told Templin that he had the right to appeal his sentence. Because "[t]he State is not contending that Templin waived his right to challenge his sentence," we need not explore this issue. Br. of Appellee at 8 n.1.

vacate judgment and withdraw [a] plea . . . shall be treated . . . as a petition for postconviction relief"); *cf. Snyder v. State*, 500 N.E.2d 154, 156 (Ind. 1986) (denying post-conviction relief where the petitioner had pleaded guilty and challenged his conviction on similar grounds, alleging lack of a competency hearing and ineffective assistance of counsel for failing to advise of a defense).

[8]     Templin argues the claims are proper on direct appeal, but we are unpersuaded by his attempts to distinguish *Tumulty*. We conclude the claims are presently barred. *See Tumulty*, 666 N.E.2d at 396 (identifying policy reasons for "[t]he long-standing judicial precedent limiting the avenue of direct appeal for guilty plea challenges," noting that a plea "brings to a close the dispute between the parties, much as settling civil parties do by submitting an agreed judgment").

## Ineffective Assistance of Counsel

[9]     Templin alleges ineffective assistance of counsel under the Sixth Amendment to the United States Constitution, a claim we review under the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, Templin must demonstrate (1) deficient performance, "meaning counsel's representation fell below an objective standard of reasonableness as gauged by prevailing professional norms," *Bobadilla v. State*, 117 N.E.3d 1272, 1280 (Ind. 2019); and (2) resulting prejudice: "a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different," *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 694).

[10] Templin argues trial counsel "fail[ed] to introduce evidence of mental disease or defect at [the] sentencing hearing as a mitigating factor." Br. of Appellant at 11. Templin essentially contends that because the court-appointed psychologist noted "a number of neurocognitive deficits" when evaluating Templin's competency to stand trial, counsel was put on notice to explore Templin's mental condition. *Id.* at 12. According to Templin, "[o]f significance here is trial counsel's failure to investigate two incidents of head trauma that Templin sustained and what, if any, significance those injuries may have had on his cognitive abilities or mental acuity." *Id.* Templin argues "there is nothing in the Record to indicate that Templin's counsel made any attempt to use the psychiatric evaluation for any purpose other than to satisfy his own curiosity as to whether Templin was considered competent to stand trial." *Id.* at 14. Templin further asserts that there "were significant issues to be explored." *Id.*

[11] Yet, Templin acknowledges that some claims of ineffective assistance "require an investigation of facts far beyond the record, and sometimes beyond the knowledge of either trial or appellate counsel." *Id.* at 15. Templin suggests that his claim of ineffective assistance "relate[s] to issues that are not visible in the Record." *Id.* at 14. It is puzzling, then, why Templin chose to pursue this claim on direct appeal—with a limited record—instead of seeking factual development through post-conviction proceedings. *See* Ind. Post-Conviction Rule 1(5) (providing that "[a]ll rules and statutes applicable in civil proceedings including pre-trial and discovery procedures are available" and that the court

"may receive affidavits, depositions, oral testimony, or other evidence").[8] We nevertheless address the claim—that is, the alleged failure of trial counsel to investigate and present evidence of mitigating circumstances at sentencing.

[12] Where a claim of ineffective assistance is based on "failur[e] to investigate, establishing [the claim] . . . would require going beyond the trial record to show what the investigation, if undertaken, would have produced. This is necessary because success on the prejudice prong of an ineffectiveness claim requires a showing of a reasonable probability of affecting the result." *Woods v. State*, 701 N.E.2d 1208, 1214 (Ind. 1998), *cert. denied*. Here, Templin agreed to a fixed sentence, so the only open issue at sentencing was where Templin would serve his sentence. Thus, to obtain relief, Templin must demonstrate a reasonable probability the trial court would not have ordered a fully executed sentence. Indeed, "[t]he dispositive question . . . is what effect the totality of the omitted mitigation evidence would have had on [the] sentence." *Coleman v. State*, 741 N.E.2d 697, 702 (Ind. 2000), 741 N.E.2d at 702. Yet, Templin only speculates he was prejudiced by the purported failure to investigate. Because of the limited record, Templin is unable to identify what, if anything, a different investigation would have uncovered. Moreover, to the extent Templin suggests trial counsel failed to adequately apprise the court of mental-health considerations, counsel

---

[8] To the extent Templin was concerned he would waive the claim by omitting it, "a Sixth Amendment claim of ineffective assistance of trial counsel, if not raised on direct appeal, may be presented in postconviction proceedings." *Woods*, 701 N.E.2d at 1220. However, such a claim "is not available in postconviction [proceedings] if the direct appeal raises any claim of deprivation of Sixth Amendment right to counsel." *Id.*

nevertheless argued for less-restrictive placement by—*inter alia*—arguing Templin "want[ed] to obtain mental health counseling," that he "does need some supervision from perhaps a mental health facility," and that he was not taking a prescribed anti-depressant when he committed the offenses. Tr. Vol. 3 at 35. Moreover, counsel elicited testimony that medication made a "big difference" in Templin, *id.* at 31, and he "was on medication and then . . . off of it," which was "part of the problem," *id.* at 30. Thus, in light of the lack of record development and the presentation of these mental-health matters at sentencing, Templin has not demonstrated ineffective assistance of counsel.[9]

## Sentencing Challenge

[13]     "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). We regularly review sentencing decisions for abuse of

---

[9] Templin also alleges ineffective assistance of counsel for the purported failure to investigate and advise of potential defenses related to Templin's mental health, apparently suggesting he might not have pleaded guilty. Yet, because Templin merely speculates about a changed outcome, he cannot meet his burden on this claim. *See Woods*, 701 N.E.2d at 1214. More basically, however, although some claims of ineffective assistance of counsel are properly raised on direct appeal, *see id.* at 1219-20, the object of the instant claim is to set aside a plea of guilty. Thus, for the reasons earlier discussed, this type of claim is available only in post-conviction proceedings. *See Tumulty*, 666 N.E.2d at 395-96. Nevertheless, this claim is no longer available to Templin because he raised a different claim of ineffective assistance of counsel on direct appeal. *See Woods*, 701 N.E.2d at 1220. Because of the risk of waiver—and other considerations—"a postconviction hearing is normally the preferred forum to adjudicate an ineffectiveness claim." *Id.* at 1219. Notably, though, there is a procedure available to expedite a post-conviction claim of ineffective assistance without first exhausting appellate remedies. *See id.* at 1219-20 (discussing the procedure articulated in *Davis v. State*, 368 N.E.2d 1149 (Ind. 1977), and later endorsed in *Hatton v. State*, 626 N.E.2d 442 (Ind. 1993)). "Although not to be used as a routine matter in adjudicating the issue of trial counsel's effectiveness," *id.* at 1220, this alternative procedure "may be appropriate" where—as here—"the claim asserted arguably requires a certain level of fact finding not suitable for an appellate court," *id.* (quoting *Lee v. State*, 694 N.E.2d 719, 721 n.6 (Ind. 1998), *cert. denied*).

discretion, which "occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court." *Bethea v. State*, 983 N.E.2d 1134, 1139 (Ind. 2013). Nevertheless, when an appellant has claimed an abuse of sentencing discretion, we need not directly address the claim, and may instead assume error—disposing of the claim under Indiana Appellate Rule 7(B). *See Windhorst v. State*, 868 N.E.2d 504, 507 (Ind. 2007) (providing that where the trial court has abused its sentencing discretion an appellate court may either remand or conduct appellate review of the sentence); *Mendoza v. State*, 869 N.E.2d 546, 556 (Ind. Ct. App. 2007) ("[E]ven if the trial court is found to have abused its discretion in the process it used to sentence the defendant, the error is harmless if the sentence imposed was not inappropriate."), *trans. denied*.[10]

[14] Appellate Rule 7(B) permits revision of a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Moreover, "[t]he place . . . a sentence is to be served is an appropriate focus" for our review. *Biddinger v. State*, 868 N.E.2d 407, 414 (Ind. 2007). In conducting review under Appellate Rule 7(B), our inquiry is not whether a placement

---

[10] In articulating a claim of abuse of sentencing discretion, Templin uses the phrase "presumptive sentence" on three occasions, citing cases from 1986, 1996, and 1999. *See* Br. of Appellant at 11, 18, 19. We remind counsel that Indiana no longer has a presumptive sentencing scheme. *See Anglemyer v. State*, 868 N.E.2d 482, 485-89 (Ind. 2007) (discussing the transition to advisory sentences), *clarified on reh'g*. We also direct counsel to the standard of review for sentencing decisions articulated in *Anglemyer*. *See id.* at 491.

would be more appropriate, but instead whether "the given placement is itself inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007).

[15] Here, Templin—thirty-one years old with no prior convictions—pretended to be a first responder, which led to his arrest. The trial court granted pre-trial release, but Templin got angry when his case manager would not let him attend a social function. Later that day, Templin removed his monitoring device and left the county. When his case manager contacted him about the monitor, Templin said to "come and get it." Tr. Vol. 3 at 18. Law enforcement later located Templin, who was driving a vehicle with three firearms inside of it. Moreover, when Templin absconded, he was already placed on the most-restrictive form of community corrections. Ultimately, although the record contains some indication Templin would benefit from a regimen of medication and that his rash of criminal activity was unusual, we cannot say incarceration is an inappropriate placement. Indeed, when placed one step down from incarceration, Templin was not compliant—boldly violating the conditions of his pre-trial release. We therefore decline to disturb the selected placement.

[16] Affirmed.

Riley, J., and Pyle, J., concur.